[No. 37005-7-I.   Division One.   September 30, 1996.]

GORDON GARY DUSKIN, ET AL., *Appellants,* v.
KENNETH CARLSON, ET AL., *Respondents.*

*David E. Duskin* and *Bailey, Duskin & Jarvill*, for appellants.

*Christine O. Gregoire, Attorney General*, and *Diane H. Cornell, Assistant; George W. McLean, Jr.*, and *Julin, Fosso, Sage, McBride & Mason*, for respondents.

PER CURIAM. — An injured worker may sue a third party for damages under the industrial insurance third party action statute. Or the worker may assign the action to the Department of Labor and Industries. The action is automatically assigned if the worker does not answer the Department's "written demand" to decide whether to sue. In this case, the Department wrote to Gordon Duskin, briefly describing third party actions, and advised him "(A) You may seek recovery yourself; or (B) you may ask Labor and Industries to consider seeking recovery for you." This permissively worded letter did not tell Duskin that failing to answer would forfeit control over his personal injury action. Because it was not reasonably calculated to generate a response, it was not a demand. Consequently Duskin's action was not automatically assigned to the Department. It follows that the Department could not release the tortfeasor, and the trial court erred in granting him summary judgment.

## FACTS

Kenneth Carlson allegedly failed to stop at a stop sign, injuring Gordon Duskin, who was driving his employer's automobile. Duskin applied for workers' compensation

benefits in fall 1993. The Department of Labor and Industries, pursuant to the third party action chapter of the Industrial Insurance Act, sent a letter to Duskin in November 1993. He opened it, read it, noticed that it lacked the promised "election form," and wrote himself a note to "call them."[1] In a later declaration, he swore that "From reading the letter, I had no idea that there was an automatic assignment of all of my claims against the driver and his insurance company if the form was not received back."[2] The Department sent the same letter to Duskin in February 1994, but this time sent it certified mail. The letter, this appeal's focal point, advised Duskin of two options:

> If your injury or occupational disease was caused by a third party, you have two alternatives: (A) You may seek recovery yourself; or (B) you may ask Labor and Industries to consider seeking recovery for you.

> Please complete the form in the back of the brochure and return it to me no later than 60 days after you receive this letter. If the form is not returned within that time, we will consider seeking recovery.

The letter also contained an election form, and a brochure with eleven questions and answers regarding third party actions. Duskin's wife signed for the letter, but neither Duskin nor his wife, who were both undergoing medical treatments, opened it.

Later, Kenneth Carlson's liability insurer, State Farm, contacted Duskin and offered to settle his action for $10,000 plus Duskin's medical expenses. Duskin rejected the offer, and State Farm told Duskin that they would "continue to deal direct with them [Labor and Industries] concerning their subrogated interest for past and future medical care that may be related to this motor vehicle accident."

The Department again wrote to Duskin in late April 1994:

> [Y]ou were sent a "Third Party Election form." . . . As we have not heard from you, this section will evaluate your claim and may attempt to recover damages in the same amount that you could have sought. . . . When your third party rights

---

[1] Clerk's Papers (CP) 28, 133.
[2] CP 128.

are assigned to us, you are freed from personal responsibility to pay the legal costs involved; however, you also give up your right to control the action. If you have any questions regarding your third party action, please call the number below.

The Department of Labor and Industries believed that it had been assigned Duskin's action because he failed to return the election form.[3] The Department settled Duskin's action for $10,000 in general damages, plus $3,969.80 that the Department had paid to Duskin. It executed a general release in Carlson's favor. When they settled, both the Department and State Farm knew that Duskin had already rejected $10,000.

The Department informed Duskin that it had settled, and gave him $10,000 in July 1994. He accepted the settlement proceeds, but administratively appealed the Department's action. The Department affirmed, and Duskin appealed to the Board of Industrial Insurance Appeals. Around the same time, Duskin sued Carlson in superior court for personal injury. Carlson contended that the Department's general release precluded his liability in tort. The Department joined the lawsuit, and the parties agreed to stay the administrative action until the court decided whether the release was valid. The superior court granted summary judgment to Carlson and the Department, holding that the release relinquished Duskin's action.

## DISCUSSION

A worker injured in the course of employment may not sue the employer or a fellow employee.[4] But the worker may sue a third party who causes the injury.[5] If the worker decides not to pursue an action, the Department can pros-

[3]*See* RCW 51.24.050(1), and RCW 51.24.070(2).

[4]RCW 51.04.010.

[5]RCW 51.24.030.

ecute or compromise it.[6] The legislature wants the Department to pursue third party actions and reimburse the workers' compensation benefits fund.[7]

What is more, the department can require the worker to decide whether to pursue a third party action by serving a written demand:

> The department or self-insurer may require the injured worker or beneficiary to exercise the right of election under this chapter by serving a written demand by registered mail, certified mail, or personal service on the worker or beneficiary.[8]

The worker must then elect by registered mail, certified mail, or personal service.[9] If a worker fails to elect within 60 days (and also institute an action or settle the third party action within 90 days), the action is assigned to the Department by operation of law.[10]

■ The Department contends that its registered letter to Duskin, together with a question and answer brochure, and an election form, was a "written demand." But the Department's letter was blandly phrased:

> If your injury or occupational disease was caused by a third party, you have two alternatives: (A) You may seek recovery yourself; or (B) you may ask Labor and Industries to consider seeking recovery for you.

> Please complete the form in the back of the brochure and return it to me no later than 60 days after you receive this letter. If the form is not returned within that time, we will consider seeking recovery.

---

[6]RCW 51.24.050(1); *In re Estate of Boettcher*, 35 Wn. App. 178, 181, 665 P.2d 1378 (1983).

[7]*Mills v. Department of Labor & Indus.*, 72 Wn. App. 575, 578, 865 P.2d 41, *review denied*, 124 Wn.2d 1008, 879 P.2d 292 (1994).

[8]RCW 51.24.070(1).

[9]RCW 51.24.080

[10]RCW 51.24.070(2), *see also* RCW 51.24.050(1), and *Maxey v. Department of Labor & Indus.*, 114 Wn.2d 542, 547, 789 P.2d 75 (1990).

> When a recovery is made, the claim benefits you received from us must be paid back to the Washington State Fund.
>
> Your rights and responsibilities on third-party actions are explained in the enclosed brochure.

A demand must be commensurate with the right that the worker may forfeit. In the context of third party actions, the worker may forfeit a significant right — control over a personal injury lawsuit. Accordingly, the letter must be reasonably calculated to generate a response, inquiry, or an understanding of the seriousness of abandoning the right. A letter which included the following would generate an appropriate response:

- mandatory language.

- conspicuous discussion of what will happen if the recipient does not answer.

- citing the statute conferring authority to demand an election.

- telling the recipient how to answer consistent with the statute.[11]

The permissively worded letter, although giving a time deadline, does not warn of the consequences following a failure to answer. It does not cite statutory authority, and it does not tell the recipient that the statute requires an election to be served personally or by certified mail. Measuring the letter against the above factors, we conclude that it is not reasonably calculated to generate a response. It does not demand that the worker elect.

The Department did, however, enclose two documents with the letter. The well written brochure addresses a worker's failure to respond:

Q: What if I do nothing?

---

[11]RCW 51.24.080.

A: You are required to complete this form. If you do not complete this form and return it to the department within 60 days, the third party action is automatically assigned to the department. Any further action is at the discretion of the department.

But without explicit language in the letter, a reader may never read 11 questions and answers in an accompanying brochure. The letter refers generically to the brochure, but does not ensure its consideration.[12] Furthermore, the brochure's explanation of consequences is inconspicuously contained in the fifth question and answer. Its general disclaimer — that it is only intended "as a general guide" and that "it is not intended to address specific cases" — dilutes the brochure's impact. The brochure also fails to tell the worker to respond by certified mail.

Likewise, the election form, although it contains some helpful information, is not a written demand. The election form cites the Department's statutory authority and announces the worker's obligation: "By this notice the Department is requiring you to exercise your right of election pursuant to RCW 51.24.070." But the obligation is announced at the form's bottom right-hand corner. Furthermore, the record contains two versions of the election form. Although the worker's obligation is announced on a version marked "5-93," it is absent from a version marked "1-95." The election form does not tell the worker that failing to respond will forfeit the right to independently prosecute an action. The form does not tell the worker to personally serve it or return it by certified mail. And again, without explicit language in the letter, recipients might never consider the form.

We conclude that the Department's letter, the first document that recipients will read, does not demand that the

---

[12]The Department also sent a letter on April 26, 1994. This letter did not comply with the certified mail requirement of RCW 51.24.070(1). Furthermore, it did not tell Duskin that he had forfeited his action (or that he could ask to assume the action — see RCW 51.24.070(4)). Instead, it stated that the Department "will evaluate your claim and may attempt to recover damages in the same amount that you could have sought."

worker elect whether to pursue an independent action. Although the accompanying documents are helpful, a recipient may not refer to them when the letter does not conspicuously identify the recipient's obligation and the penalty. Duskin's third party claim is not assigned to the Department until it effectively communicates its demand. Because the Department did not demand that Duskin elect, it lacked the authority to release Carlson from liability.[13]

We reverse the trial court's summary judgment, and remand to the trial court to enter summary judgment against the Department, and to strike Carlson's affirmative defense based upon the release.

After modification, further reconsideration denied July 15, 1997.

---

[13]*Cf. Ebsary v. Pioneer Human Servs.*, 59 Wn. App. 218, 225, 796 P.2d 769 (1990).