965 P.2d 611 (1998)
136 Wash.2d 550
Gordon Gary DUSKIN and L. Marie Duskin, Respondents,
v.
Kenneth CARLSON and Jane Doe Carlson, and their marital community; and the Department of Labor and Industries of the State of Washington, Petitioners.
No. 65998-2.
Supreme Court of Washington, En Banc.
Argued June 23, 1998.
Decided October 1, 1998.
*612 McLean & Trichak, Kent T. Van Den Berg, Christine Gregoire, Attorney General, Diane Cornell, Assistant Attorney General, Seattle, for Petitioners.
Bailey, Duskin & Jarvill, David E. Duskin, Arlington, for Respondents.
DOLLIVER, Justice.
The Washington State Department of Labor and Industries (the Department) and the Defendant, Kenneth Carlson (Carlson), seek review of a Court of Appeals' decision reversing the trial court's grant of summary judgment in their favor. Duskin v. Carlson, 83 Wash.App. 694, 922 P.2d 1373 (1996). This case addresses the adequacy of the form letters and brochures the Department sends to injured workers who have potential third party claims. The Court of Appeals held the correspondence too vague to constitute a demand that the worker elect whether to pursue a claim or assign it to the Department.
In September 1993, Plaintiff Gordon Duskin (Duskin) was injured in a work-related, two-car accident. Carlson was driving the other car. The Department allowed Mr. Duskin's claim for industrial insurance benefits.
Chris White, a Department representative, wrote to Duskin on November 15, 1993, and informed him he might have a third party claim. The letter stated:
If your injury or occupational disease was caused by a third party, you have two alternatives: (A) You may seek recovery yourself; or (B) you may ask Labor and Industries to consider seeking recovery for you.
Please complete the form in the back of the brochure and return it to me no later than 30 days after you receive this letter. If the form is not returned within that time, we will consider seeking recovery.
....
Your rights and responsibilities on third-party actions are explained in the enclosed brochure.
Clerk's Papers at 106. Duskin received this letter, but "there was no form included," and he so noted on the letter. Clerk's Papers at 128. Duskin did not call the Department to ask for the form, nor did he take any other action in response to the November letter.
On February 25, 1994, this time by certified mail, the Department sent a third party action letter, with referenced enclosures, to Duskin. The enclosures were a brochure and an election form. The brochure explained Mr. Duskin's rights and responsibilities under chapter 51.24 RCW. Again, the letter informed Mr. Duskin he had "two alternatives" regarding a possible cause of action against Mr. Carlsonto seek recovery himself or ask the Department to consider seeking recovery for him. Clerk's Papers at 108. The letter indicated it was from Kim Malcom of the "Third Party Section" and included an address and telephone number where Mr. Malcom could be reached. Id. The letter also referred Mr. Duskin to an election form accompanying the letter and directed him to "complete the form ... and return it ... no later than 60 days after [receipt of the Department] letter." Id. The letter also reiterated: "Your rights and responsibilities on third-party actions are explained in the enclosed brochure." Id.
The enclosed brochure contained a detachable "THIRD PARTY ELECTION FORM" on which Mr. Duskin was asked to elect between Option A ("MY ATTORNEY OR I WILL PURSUE THIRD PARTY ACTION") and Option B ("I ASSIGN THE ACTION TO THE DEPARTMENT"). Clerk's Papers at 30. The brochure contained a series of questions and answers regarding third party actions, including the following:
Q. Do I have to pursue a third party action?
*613 A. No. However, the law does require you to make a choice. You must either pursue the action yourself, with or without an attorney (Option A), or assign the action to the Department of Labor and Industries. (Option B).
Q. What if I do nothing?
A. You are required to complete this form. If you do not complete this form and return it to the department within 60 days, the third party action is automatically assigned to the department. Any further action is at the discretion of the department.
Id.
By the time the Department sent the letter and brochure, both Duskin and his wife were undergoing chemotherapy for recently diagnosed cancers. Duskin's wife signed for the certified February 25, 1994, letter. However, she did not open the letter or give it to her husband; instead, she bundled it with the couple's mail and "stuck it away in a cupboard." Clerk's Papers at 129.
In March 1994, Kim Malcom (who had sent the Department's letter to Duskin) wrote to State Farm, Carlson's insurance carrier, and informed State Farm of Duskin's worker compensation claim. The Department noted it was awaiting a response from Duskin regarding whether he planned to pursue an action against Carlson or assign it to the Department. A copy of this letter was sent to Duskin.
On April 21, 1994, Duskin received a letter from State Farm offering him $10,000 to settle his claim. In response, Duskin called Wayne Kittredge, the State Farm adjuster, and informed him he was not ready to settle. The Department was unaware of this exchange and, indeed, believed Duskin had never responded to the State Farm offer.
On April 26, 1994, Kim Malcom wrote Duskin again, stating the Department had not heard from him and would therefore evaluate the third party claim and might "attempt to recover damages in the same amount that you could have sought." Clerk's Papers at 110.
In June 1994, State Farm sent to the Department the offer it had previously made to Duskin. In July 1994, the Department wrote to both Duskin and State Farm, indicating the Department had "sole responsibility to act for Mr. Duskin," agreeing to settle the claim for $13,969.80, and explaining Duskin would receive $10,000 while the Department would receive $3,969.80 to reimburse it for the benefits it had already paid. Clerk's Papers at 112. Duskin did not object to the settlement. Upon receipt of the payment from State Farm, the Department released Carlson from further liability. Duskin cashed the $10,000 check on September 15, 1994.
On September 20, 1994, Duskin protested the Department's actions, which the Department then affirmed. Duskin appealed to the Board of Industrial Insurance Appeals. In October 1994, however, Duskin sued Carlson in Snohomish County Superior Court. The Department intervened in the Superior Court action, and the parties agreed to stay the administrative appeal until the courts had decided the validity of the settlement.
Both parties moved for summary judgment. The trial court ruled in favor of Carlson and the Department. The Court of Appeals reversed, holding the Department's February 25, 1994, correspondence was not a demand under RCW 51.24.070(1). Duskin v. Carlson, 83 Wash.App. 694, 922 P.2d 1373 (1996). We granted review and now reverse the Court of Appeals.
In the Court of Appeals, Duskin argued the Department's certified mail delivery of the February 25, 1994, letter violated his right to procedural due process. Although the Court of Appeals did not reach this issue, Duskin asks us to consider it, stating, "Either personal service or at the very least, certified mail with restricted delivery must be utilized in order to assure that the worker is not deprived of his right to procedural due process." Br. of Appellants at 19.
RCW 51.24.030(1) provides:
If a third person, not in a worker's same employ, is or may become liable to pay damages on account of a worker's injury for which benefits and compensation are provided under this title, the injured worker *614 or beneficiary may elect to seek damages from the third person.
RCW 51.24.070 provides, in relevant part:
(1) The department ... may require the injured worker or beneficiary to exercise the right of election under this chapter by serving a written demand by registered mail, certified mail, or personal service on the worker or beneficiary.
(2) Unless an election is made within sixty days of the receipt of the demand..., the injured worker or beneficiary is deemed to have assigned the action to the department....
Duskin maintains he is not challenging the constitutionality of the statute, which clearly allows service by certified mail, but only the procedure used in this case. However, the Department complied with RCW 51.24.070: it sent the February 25, 1994, letter by certified mail. The statute does not require "restricted delivery." Had the Legislature intended to require restricted delivery, or another method guaranteeing evidence of actual delivery to the recipient, it could have said so expressly. In re Marriage of McLean, 132 Wash.2d 301, 307, 937 P.2d 602 (1997).
Although the plain language of RCW 51.24.070 does not require personal service or restricted delivery, Duskin argues the statute should be construed to require either of those options in order to safeguard procedural due process rights. Where possible, statutes will be construed so as to avoid any unconstitutionality. City of Seattle v. Montana, 129 Wash.2d 583, 590, 919 P.2d 1218 (1996). The Fourteenth Amendment requires that deprivation of life, liberty, or property by adjudication must be preceded by notice and an opportunity to be heard. Due process requires "notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." Mullane v. Central Hanover Bank & Trust Co., 339 U.S. 306, 314, 70 S.Ct. 652, 94 L.Ed. 865 (1950).
Due process does not require actual notice in all circumstances. Martin v. Meier, 111 Wash.2d 471, 477, 760 P.2d 925 (1988). In fact, courts of this state have found mailed notice sufficient for due process purposes even where it is not actually received. Baker v. Altmayer, 70 Wash.App. 188, 851 P.2d 1257 (1993) (holding mechanic's lien statute does not require actual receipt of notice sent by registered or certified mail to owner of materialmen's intent to claim lien); see also State v. Rogers, 127 Wash.2d 270, 898 P.2d 294 (1995); State v. Whitney, 78 Wash.App. 506, 897 P.2d 374, review denied, 128 Wash.2d 1003, 907 P.2d 297 (1995).
In determining what constitutes proper notice, we weigh the individual interest at stake against the important state interest involved. Duskin's property interest is control over a potential lawsuit. The Department's interest is efficient administration of the State's social insurance system and minimizing associated costs to the industrial insurance fund. Mills v. Department of Labor & Indus., 72 Wash.App. 575, 578, 865 P.2d 41 (1994). Certified mail is efficient and inexpensive. Service of actual notice would entail a far greater burden. Marriage of McLean, 132 Wash.2d at 311-12, 937 P.2d 602.
In this case, Duskin's wife received and signed for the Department's letter to her husband. Duskin simply did not see it because his wife placed it in a cupboard. Certified mail, which is proper service under the statute, was reasonably calculated, under all the circumstances, to reach Duskin.
Duskin also argues even if he had opened and read the February 25, 1994, letter, it did not constitute the "demand" required by statute. The Department argues because Duskin did not read the "notice of election," he is precluded from challenging its wording.
In Nisqually Delta Ass'n v. City of DuPont, 103 Wash.2d 720, 696 P.2d 1222 (1985), we stated notice statutes in civil cases should fairly and sufficiently apprise those who may be affected of the nature and character of an action. Unless someone is actually misled or confused, notice is deemed adequate. Id. at 727, 696 P.2d 1222. And in State v. Storhoff, 133 Wash.2d 523, 946 P.2d 783 (1997), we held that in the absence of actual prejudice, incorrect notice from the Department of Licensing *615 did not invalidate revocation of three defendants' licenses.
Duskin does not argue he was confused or misled into inaction by the February 25, 1994, correspondence from the Department. Having now read the letter, however, he argues it was insufficient to put him on notice that he "would be losing an important right as to [his] claim against Carlson." Clerk's Papers at 129. He also states, "I have since read the pamphlet and it, too, does not make the election very clear." Id.
Duskin blames his inaction on the substance of the letter, which he contends was poorly worded and would not, in any event, have compelled him to act. In fact, his failure to act was not brought on by any inadequacy in the letter, but by Duskin's failure to read it. Any prejudice he claims is purely hypothetical, because it is undisputed he did not read the letter until after the election deadline had passed.
Moreover, we are satisfied the Department's correspondence to Duskin constituted a demand. Again, RCW 51.24.070 provides, in relevant part:
(1) The department ... may require the injured worker or beneficiary to exercise the right of election under this chapter by serving a written demand by registered mail, certified mail, or personal service on the worker or beneficiary.
(2) Unless an election is made within sixty days of the receipt of the demand..., the injured worker or beneficiary is deemed to have assigned the action to the department....
(Emphasis added.) Because the term "demand" is not defined in the statute, we apply its plain and ordinary meaning. Chamberlain v. Department of Transp., 79 Wash.App. 212, 217, 901 P.2d 344 (1995). A demand has been defined as "[t]he assertion of a legal right; a legal obligation asserted in the courts" and "[a]n imperative request preferred by one person to another, under a claim of right, requiring the latter to do or yield something or to abstain from some act." Black's Law Dictionary 429 (6th ed.1990). A demand is also "an act of ... asking esp. with authority" and "an expressed desire for ownership or use." Webster's Seventh New Collegiate Dictionary 219 (1969). The Court of Appeals held a demand must contain mandatory language, conspicuous discussion of what will happen if the recipient does not answer, citation to the statute conferring authority to demand an election, and information telling the recipient how to answer consistent with the statute. Duskin, 83 Wash.App. at 699, 922 P.2d 1373.
No strict definition of "demand" has developed in case law; rather, the term has been defined broadly and flexibly. In Gershman v. Barted Realty Corp., 22 Misc.2d 461, 198 N.Y.S.2d 664 (1960), the New York Supreme Court defined it as a request to do a particular thing specified under a claim of right on the part of the person requesting, holding:
The demand "may be couched in the customarily-used polite language of the day. All that is required is the assertion of the right ... and a request for compliance therewith."
Gershman, 198 N.Y.S.2d at 665 (quoting National Life & Accident Ins. Co. v. Dove, 141 Tex. 464, 174 S.W.2d 245, 247 (1943)).
In Freitag v. Huiskamp, 166 N.W.2d 915 (Iowa 1969), the Iowa Supreme Court held a taxing agency's letter constituted a demand when it informed the taxpayer of the tax and penalty date and the name of a contact person. That the letter was "polite, courteous and informative" rather than "blunt or threatening" did not disqualify it as a demand. Id. at 917.
In Gil Enters., Inc. v. Delvy, 79 F.3d 241 (2d Cir.1996), the court held:
[A] demand is intended to trigger certain rights and obligations.... In order to prompt such rights and obligations, it is necessary that the party upon whom the demand is being made be put on notice that those legal obligations have been triggered.... [T]he gravamen of a legal demand is its notice providing function.
Id. at 246.
In this case, the Department's correspondence to Duskin meets the various definitions of "demand." When considered together, the letter and brochure apprised *616 Duskin of his rights and responsibilities and directed him to act.
The letter states that if the form is not completed and returned within 60 days, the Department may seek recovery; it also states that, in the absence of a reply, the Department will consider pursuing the third party claim itself. The letter also directs Duskin to the brochure, which explains inaction will result in automatic assignment of a potential lawsuit to the Department. Moreover, the election form is quite clear, requesting the selection of Option A ("MY ATTORNEY OR I WILL PURSUE THIRD PARTY ACTION") or Option B ("I ASSIGN THE ACTION TO THE DEPARTMENT"). Clerk's Papers at 30.
The Court of Appeals deemed the brochure "well written," but felt the letter was so vague the worker might not read the brochure. Duskin, 83 Wash.App. at 699, 922 P.2d 1373. While the letter may be "blandly phrased," or "permissively worded," Id. at 698-99, 922 P.2d 1373, it is not vague. It triggered Duskin's responsibilities, gave him a deadline, and told him what would occur if he did not act.
We hold the Department issued a proper demand. We reverse the Court of Appeals and affirm the decision of the trial court.
DURHAM, C.J., and SMITH, GUY, MADSEN, ALEXANDER and TALMADGE, JJ., concur.
JOHNSON, Justice (dissenting).
The majority concludes the Department of Labor and Industries' (Department) letter and brochure provides sufficient notice to constitute a "demand" as required under RCW 51.24.070. I disagree and would affirm the decision and reasoning of the Court of Appeals. By defining a legal demand "broadly and flexibly," the majority ignores the purpose of the statute, misapplies the cases cited in support of its holding, and provides no objective criteria by which it thinks the sufficiency of a demand should be tested. At the minimum, a demand letter should provide unequivocal notice that legal rights are at stake and legal consequences will follow from inaction. The Department's letter to Mr. Duskin fails to do either.
I agree with the Court of Appeals reasoning that a proper demand letter should include mandatory language, a conspicuous discussion of what will happen if the injured worker does not respond, a citation to the statute conferring authority to demand an election, and instructions specifically telling the recipient how to respond. Duskin v. Carlson, 83 Wash.App. 694, 699, 922 P.2d 1373 (1996) (citing RCW 51.24.080). Meeting these requirements is not difficult. I also agree with the Court of Appeals conclusion that the Department's letter does not "demand" Mr. Duskin to elect.
Under RCW 51.24.050(1), an injured worker's election not to proceed with a third-party action operates as an assignment of the cause of action to the Department. However, the Department has no authority to require the injured worker to exercise the right of election until the Department serves "written demand" upon the worker. RCW 51.24.070(1). Furthermore, in all cases, the Department's interest in the outcome of litigation is limited to reimbursement of benefits paid. RCW 51.24. 050(4)(c), (d);.060(1)(c); .090.
The clear purpose of the statute is to preserve the industrial insurance fund to the limited extent of reimbursement, while recognizing and safeguarding the worker's significant interest in an independent, legal remedy. Within this context, the word "demand" is not loosely intended and must be given meaningful effect.[1] The majority's holding essentially reads the demand requirement out of the statute and, thus, ignores the worker's interest.
Here, the permissively worded letter, although giving a time deadline, does not warn of the consequences following a failure to *617 answer. It does not cite statutory authority, and it does not tell the recipient that the statute requires any response be served personally or by certified mail.
Importantly, we are examining the forfeiture of a significant rightcontrol over a personal injury lawsuit. Mr. Duskin does not challenge the Department's statutory authority to assignment of the claim but merely argues the Department must provide legal notice in clear and specific terms. The language of the Department's letter"If the form is not returned within [the time limit], we will consider seeking recovery"[2]hardly notifies an injured worker he or she may forfeit the right to seek recovery for an injury.
The majority cites several cases[3] dealing with the requirements of a demand letter, but fails to correctly apply the case law. Contrary to the majority's reading, these cases recognize the fundamental notice providing function of a demand where legal rights are at stake.
In Gil Enters., for example, the court specifically distinguished between a demand and a mere request which carries no legal consequences:
By its nature, a demand is intended to trigger certain rights and obligations.... In order to prompt such rights and obligations, it is necessary that the party upon whom the demand is being made be put on notice that those legal obligations have been triggered. Without notice, the demand would serve no purpose because it would fail to provide ... the opportunity to [comply]. Accordingly, the gravamen of a legal demand is its notice providing function.

Gil Enters., 79 F.3d at 246 (emphasis added). The Gil Enters. court found the subject letter insufficient to constitute a demand because it contained "precatory language" and "ambiguous statements" which "did not rise to the level of a demand, because they objectively failed to put [defendant] on notice of the drastic legal repercussions that could result from noncompliance." Gil Enters., 79 F.3d at 246 (emphasis added). This is exactly the situation we have here. The majority recognizes Gil Enters. but fails to apply its holding.
In Gershman, the court found that a loosely worded letter requesting action on the part of the defendant fell "far short of measuring up to the requirements of what constitutes a legal demand" because it did not "in any way indicate that the request [was] made under a claim of right" nor request compliance in accordance with the claimed right. Gershman, 22 Misc.2d at 462, 198 N.Y.S.2d 664 (emphasis added).
Similarly, in Freitag, a tax evasion case, the court found the subject tax assessment notice constituted a demand only after reasoning "it seems inconceivable that a wealthy taxpayer accustomed to paying taxes could misunderstand or misconstrue the letter or think that she could ignore it." Freitag, 166 N.W.2d at 917. The court clearly believed the taxpayer had engaged in intentional misconduct and found any other result would have been "flagrantly unjust." Nevertheless, the court reiterated "`the word "demand" is defined as meaning the assertion of a legal right; ... a peremptory claim to a thing of right; ... a request addressed to a person that he will do some act which he is legally bound to do, after the request has been made....'" Freitag, 166 N.W.2d at 919 (emphasis added) (quoting 26A C.J.S. Performance or Breach of Conditions (Demand) § 213 at 169 (1956) (footnotes omitted)).
Dictionary definitions also "make clear that a demand requires an imperative solicitation for that which is legally owed...." Gil Enters., 79 F.3d at 246 (emphasis added). See, e.g., Black's Law Dictionary 429 (6th ed.1990) (emphasis added) (A demand is "[a]n imperative request preferred by one person to another, under a claim of right, requiring the latter to do or yield something or to abstain from some act.").
*618 The majority cites to all of the cases above, yet its analysis is more concerned with the tone of the Department's letter than with its content. While I take no issue with the Department's letter being "polite and courteous" rather than "blunt or threatening," see majority at 13 (citing Freitag, 166 N.W.2d at 917), a polite tone does not relieve the Department of providing adequate legal notice to workers that inaction will result in the loss of significant, personal rights.
The majority's analysis combines the language of the letter and the language of the brochure and forms sent with the letter. However, our analysis should be limited to the language of the letter alone. The Department does not give clear and unequivocal notice, much less make a "demand," by a patchwork quilt of language parsed from a collection of brochures and forms. Accordingly, the language contained in the form is not relevant. Further, while the form might be helpful, the record contains two election forms: one that did not cite any statutory authority and the other that cited authority only at the form's bottom right hand corner. Duskin, 83 Wash.App. at 700, 922 P.2d 1373. Significantly, neither election form warns the worker that failing to respond results in forfeiture of the legal right to pursue an independent action.
I agree with the Court of Appeals analysis of the facts. The letter received by Mr. Duskin merely stated: "you may ask Labor and Industries to consider seeking recovery for you." Clerk's Papers at 106. Nowhere on the election form is there language advising of the serious legal consequences of failure to respond. The only warning given of the potential legal consequences is contained halfway through a general question and answer brochure which, by its own terms, does not apply to "specific cases." See Clerk's Papers at 30, 82-83.
The Court of Appeals found the letter, brochure, and election forms insufficient to constitute a legal demand because they did not contain (1) mandatory language; (2) a conspicuous discussion of what will happen if the recipient does not answer; (3) any citation to the statute conferring authority to demand an election; and (4) a description telling the recipient how to answer consistent with the statute. Duskin, 83 Wash.App. at 699, 922 P.2d 1373. The majority ignores these factors without establishing any objective means by which the sufficiency of a demand may be tested, merely deciding this particular letter and brochure suffice.
I would hold a proper legal demand requires at least an unequivocal statement requesting the action to be taken, made under a claim of right (in this case, citation to the statute conferring authority to demand election), and a clear and conspicuous warning of the legal ramifications of either action or inaction. These, at the minimum, ensure a legal demand's fundamental notice providing function is met. The Department could easily include these basic elements in its legal communications, particularly when such communications start a limitations period running against the recipient.
The majority shows impatience with Mr. Duskin's argument on this issue, reasoning that he did not actually read the letter which he now claims was insufficient. That Mr. Duskin did not actually read the letter is irrelevant to whether the Department has met the statutory "demand" requirement. An inadequate letter does not suddenly become adequate because it is unread.[4] Thus, contrary to the majority's conclusion, Mr. Duskin's claimed prejudice is not "purely hypothetical." See majority at 615. Under RCW 51.24.070, Mr. Duskin's right to sue is automatically assigned to the Department only after proper "demand" has been made upon him. If the Department's letter fails the statute's demand requirement, then the clock never begins to run. Thus, the Department's appropriation of Mr. Duskin's legal right is without statutory authority. Accordingly, Mr. Duskin's claimed prejudice is very real; if the Department never obtained the authority to act, its action was unlawful *619 whether or not Mr. Duskin had prior knowledge.[5]
I would find the Department's letter and brochure insufficient to constitute a legal demand. I would require objective factors to test whether a communication meets the basic notice giving function of a demand, including: (1) an unequivocal statement requesting the specific action to be taken; (2) reference to the authority under which the request is made; and (3) a clear and conspicuous warning of the legal consequences. For these reasons, I dissent.
SANDERS, J., concurs.
NOTES
[1] The original legislation, Senate Bill 2154, permitted the Department to require election upon "written notice." The final bill, as passed, was changed to require "written demand." See Washington State Legislative Digest and History of Bills of the Senate and House of Representatives 60, 45th Leg. 1st Ex.Sess. (final ed.1977). Presumably, the Legislature had a specific intention in making this revision.
[2] Clerk's Papers at 106.
[3] See Gershman v. Barted Realty Corp., 22 Misc.2d 461, 461-62, 198 N.Y.S.2d 664 (1960); Freitag v. Huiskamp, 166 N.W.2d 915 (Iowa 1969); Gil Enters. v. Delvy, 79 F.3d 241 (2d Cir.1996).
[4] Under the majority's reasoning, would a blank letterhead constitute a "demand" simply because Duskin failed to read it?
[5] The majority's reliance on State v. Storhoff, 133 Wash.2d 523, 946 P.2d 783 (1997), is misplaced. Unlike Storhoff, this case is not about postdeprivation notice, but whether the Department acted lawfully in the first instance. Storhoff involved a challenge to a postdeprivation notice and opportunity for hearing. The defendants had already lost their licenses by operation of law. Thus, the State's initial actionrevocation of the licenseswas taken with legal authority. The question was whether the State's subsequent notice of revocation complied with due process. Conversely, in this case, proper demand is a prerequisite to the Department's authority to act. Without proper demand, the Department may not simply appropriate the legal rights of others. If the Department never achieved the authority to act, its action was unlawful whether or not Mr. Duskin had prior knowledge.