[No. 46155. En Banc. August 9, 1979.]

THE STATE OF WASHINGTON, *Respondent,* v. LOUIS R. BURKE, *Appellant.*

*Haugen & Thoreen,* by *Henry Haugen* and *Harold A. Thoreen,* for appellant.

*Grant S. Meiner, Prosecuting Attorney,* for respondent.

ROSELLINI, J.—The appellant, a commercial gill–net fisherman, was cited for unlawfully possessing or taking fish during a closed season, and was found guilty when the matter was tried to the Superior Court.

The State's evidence showed that at 5:30 a.m. on August 2, 1976, Department of Fisheries patrol officers observed the appellant's vessel approaching Port Angeles. The nets, which were on the deck, were wet and contained marine growth. There was a good wind and waves were washing onto the deck at times. The officers boarded the boat and observed fresh salmon in the fish box. On August 1, an emergency fisheries regulation, No. 76–61, had become effective and prohibited fishing in the area from the direction of which the vessel was proceeding.

At the trial, the appellant denied that he had caught or obtained the fish the preceding night and day, and testified that he had caught some of the fish and had been given others on an earlier day when fishing was open. He accounted for the interval that they had been in the box by explaining that he had had to take his boat to Port Townsend for repairs, and had iced the fish down in the meantime. He was returning to Port Angeles to have the fish canned, he said. The fisherman who had given him some of the fish was called as a witness. This witness corroborated the appellant's description of the transaction, but upon having his memory refreshed, recalled that he had given the fish to the appellant on the night of August 2 at about midnight.

The appellant urges that the evidence was insufficient to sustain the conviction. Since the officers did not observe the appellant fishing, the evidence against him was all circumstantial. The evidence which we have cited reveals that there was a conflict in the testimony. The trial judge, who assesses the credibility of witnesses, was justified in concluding that the officer was correct in his judgment that the fish had been freshly caught and the nets had been used that evening. There was no contention that the fish had been caught in some area which was open on August 2 and the preceding day. The only conclusion which the court could reasonably reach beyond a reasonable doubt was that the fish had been caught or were in the appellant's possession in violation of the regulation.

It is next contended that the regulation was invalid because it was not signed by the director of the Department of Fisheries, but by one of his deputies. RCW 75.08.090, providing for the adoption of rules and regulations of the director, does not require that the director shall sign such rules and regulations. Promulgation is done pursuant to RCW 34.04, which likewise does not require the director's signature. RCW 75.08.100 provides that such rules and regulations shall be admitted as evidence in courts of the state

when accompanied by an affidavit that the rule or regulation has been lawfully adopted, promulgated, and published, and the affidavit shall be prima facie evidence of proper adoption. Such an affidavit was filed in this case. It was not invalidated by the fact that the director did not personally sign the regulation.

The regulation provides:

I, Donald W. Moos, Director of Fisheries of the State of Washington, find that immediate adoption of the following emergency regulation governing the taking of food fish is necessary for the preservation of the general welfare, and that to delay adoption in order to present views on the proposed action would be contrary to the public interest. Emergency adoption of these regulations is necessary to achieve proper catch and escapement of sockeye salmon pursuant to the recommendations of the International Pacific Salmon Fisheries Commission.

Section 1. A new subsection to be known as subsection (515) is added to WAC 220-28-100 to read as follows:

. . .

(a) Purse seine: For the week beginning August 1, 1975, it shall be unlawful to take, fish for or possess salmon taken with purse seine gear for commercial purposes in Areas 4B, 5, 6, 6A, 6C, 7, and 7A except from 5:00 AM to 9:30 PM on Tuesday August 3, 1976.

(b) Gill net: For the week beginning August 1, 1975, it shall be unlawful to take, fish for or possess salmon taken [with] gill net gear for commercial purposes in Areas 4B, 5, 6, 6A, 6C, 7, 7A and western portion of 7B except from 7:00 PM Monday August 2 to 9:30 AM Tuesday August 3, 1976.

. . .

Dated this 30th day of July 1976.

s/Donald W. Moos/by:
Donald W. Moos Frank Haw
Director.

Order of the Director of Fisheries No. 76-61, WAC 220-28-100(515).

It will be seen that, while it was adopted on July 30, 1976, subsections (515)(a) and (b) purport to apply to the "week beginning August 1, 1975". The appellant contends,

therefore, that the order on its face did not apply at the time of his alleged violation.

It is an established rule of statutory construction that absurd results should be avoided. *Blondheim v. State,* 84 Wn.2d 874, 529 P.2d 1096 (1975). The spirit or purpose of an enactment should prevail over the express but inept wording. *Alderwood Water Dist. v. Pope & Talbot, Inc.,* 62 Wn.2d 319, 382 P.2d 639 (1963). And if a statute contains a number which was obviously intended to be another number, the court must give effect to the intent of the drafter, since it is presumed he did not intend to do an absurd or useless thing. *Ernst v. Kootros,* 196 Wash. 138, 82 P.2d 126 (1938). Rules of statutory construction apply to administrative rules and regulations, particularly where, as here, they are adopted pursuant to express legislative authority. *Hayes v. Yount,* 87 Wn.2d 280, 552 P.2d 1038 (1976). A regulation adopted July 30, 1976, obviously could not apply to August 1975. A reasonable person reading the regulation would recognize the typographical error, and in the absence of any contention or showing that the appellant was deceived thereby, we do not find it a sufficient basis upon which to set aside the conviction.

The appellant's major contention is that order No. 76–61 was designed to allocate fish between treaty Indians and non–Indian fishermen pursuant to an order of the federal district court for the Western District of Washington issued in *United States v. Washington,* 384 F. Supp. 312 (W.D. Wash. 1974). We held in *Puget Sound Gillnetters Ass'n v. Moos,* 88 Wn.2d 677, 565 P.2d 1151 (1977), a case decided after this case arose, that the Department of Fisheries has no authority under state law to allocate fish among users of the same class, and if it restricts the taking of fish, it must be done for conservation purposes. In that case, the department had issued a regulation which allotted to treaty Indians a specified number of fish out of those available for harvest.

There is no such regulation before us in this case. The regulation on its face applies to all persons, and it declares

that it is necessary to "achieve proper catch and escapement of sockeye salmon pursuant to the recommendations of the International Pacific Salmon Fisheries Commission," in other words, for conservation purposes.

■ It is insisted, however, that the regulation was not being enforced against treaty Indians. There was testimony by one witness that Makah Indians were fishing in the closed area that day, and the appellant introduced in evidence a copy of a tribal fishing regulation declaring the area in question to be open for Indian fishing on that date.

Without considering the respondent's objections to the authentication of this document and assuming that Indians were fishing in the area that day and that none of them were cited, as the appellant contends, his evidence fell short of establishing an intentional allocation of fish by the department. The existence of the federal court order did not deprive the department of the right to make and enforce regulations deemed necessary for the conservation of the fishery resource. If there was discrimination or inequity, it must be ascribed to the federal order and not to the department which, insofar as the evidence shows, enforced its regulations to the extent that it could do so. And if there was some resultant "division" of the fish as a result of Indian tribal regulations, it was not purposeful on the part of the department, insofar as we are shown, but rather an unavoidable incident to the enforcement of its valid regulations.

Were we to accept the appellant's theory, we would be forced to hold that the federal court order operated to render the department impotent to accomplish its primary objective of conservation. Such a holding would result only in frustration of the legislative purpose and the public interest, as well as the interest of all fishermen in preserving the fishery of this state. To convince us that justice demands the adoption of such a principle would require a much greater showing of inequity or abuse of administrative authority than is made here.

480

The appellant has failed to show that the adoption and enforcement of the regulation in question involved allocation of fish by the Department of Fisheries.

What we have said with respect to allocation applies equally to the appellant's contention that the department's actions involved an implementation of treaties which deny equal protection to all citizens of the state. We held in *Washington State Commercial Passenger Fishing Vessel Ass'n v. Tollefson,* 89 Wn.2d 276, 571 P.2d 1373 (1977), and *Purse Seine Vessel Owners Ass'n v. Moos,* 88 Wn.2d 799, 567 P.2d 205 (1977), that such implementation is forbidden under the Fourteenth Amendment. If there was such implementation, it was through no volitional act or restraint of the department, insofar as the appellant shows, but arose from another source.

We affirm the judgment of the trial court, finding the defendant guilty as charged.

UTTER, C.J., WRIGHT, BRACHTENBACH, HOROWITZ, DOLLIVER, HICKS, and WILLIAMS, JJ., and BEVER, J. Pro Tem., concur.