[No. 13328-1-III.   Division Three.   December 20, 1994.]

BOISE CASCADE CORPORATION, *Appellant*, v. RICHARD L. HUIZAR, ET AL, *Respondents*.

---

*Richard R. Johnson* and *Wiley, Hurst & Associates,* for appellant.

*William L. Halpin, William T. Scharnikow,* and *Prediletto, Halpin, Cannon,* for respondents.

*Christine O. Gregoire, Attorney General,* and *Nancy Thygesen Day, Assistant,* for respondent State.

THOMPSON, C.J. — Boise Cascade Corporation, a self-insured employer, appeals summary judgment orders entered in favor of two employees, Richard Huizar, Jr., and Dewayne L. Wentz. The orders affirmed decisions by the Board of Industrial Insurance Appeals (Board) requiring Boise Cascade to pay the employees' surgical bills. Boise Cascade contends it was not responsible for payment because the surgeries were elective, nonemergent procedures completed without its prior authorization or the prior authorization of the Department of Labor and Industries (L&I) and, in the case of Mr. Huizar, billings were not submitted within 90 days of service. We affirm.

FACTS AND PROCEDURAL HISTORY

Richard Huizar, Jr., Claim

This claim has a 14-year history. Only the salient facts are summarized here.

On August 26, 1980, while employed by Boise Cascade, Mr. Huizar sustained an industrial injury involving his lower back. He timely filed an accident report. His attending orthopedic surgeon, Dr. Jack C. Irwin, saw him in consultation with another orthopedic surgeon, Dr. Max Bocek. Later, Mr. Huizar was treated by Dr. Todd Orvald, Dr. Irwin's partner. Although surgical fusion was recommended by Dr. Orvald, his initial treatment was conservative, not surgical, in nature. Dr. Orvald completed a closing examination of Mr. Huizar on October 17, 1983, and sent a followup letter rating impairment to Boise Cascade on March 6, 1984.

On April 18, 1984, L&I closed Mr. Huizar's claim with time-loss compensation paid to December 2, 1982, and an award of permanent partial disability.

On January 23, 1986, Mr. Huizar signed an application to reopen his claim for aggravation of condition. The application was signed at Dr. Orvald's office. On that portion of the application which asked if the claimant had been examined since his claim was closed, Dr. Orvald's office typed "see attached sheet". The attached sheet was a copy of a letter written by Dr. Orvald to Dr. Bocek referring Mr. Huizar to

him for consultation and requesting a second opinion as to whether a 1-level fusion would help the patient's condition.

Boise Cascade received Mr. Huizar's application to reopen on January 29, 1986. On January 31, his application was denied. Copies of the denial form were sent to Dr. Orvald, Dr. Bocek and Mr. Huizar's attorney.

Mr. Huizar was seen by Dr. Bocek on February 6, 1986. Dr. Bocek agreed that surgical fusion was appropriate. On March 26, 1986, Mr. Huizar was admitted to the hospital with a diagnosis of spondylolisthesis L5-S1, symptomatic, grade I. Dr. Orvald performed a posterolateral spinal fusion at L5-S1 without the prior authorization of L&I or Boise Cascade.

In June 1986, Mr. Huizar's attorney called the Boise Cascade claims administrator, stating the original of Mr. Huizar's application to reopen claim had been misplaced by L&I. Boise Cascade was asked to resubmit the reopening application. It did so on June 3.

On July 7, 1986, L&I entered an order denying reopening of Mr. Huizar's claim and directing closure. Mr. Huizar appealed to the Board. On July 31, 1986, L&I entered an order assuming jurisdiction over Mr. Huizar's claim and holding the July 7 order in abeyance pending medical examination and such further order as may be indicated. On July 31, the Board returned the claim to L&I for further action.

On December 18, 1986, L&I ordered Mr. Huizar's claim reopened effective June 5, 1986, for authorized treatment and benefits. On January 8, 1987, Boise Cascade sent a letter to Dr. Orvald notifying him it was challenging L&I's decision to reopen the claim and acknowledging responsibility for Mr. Huizar's treatment if the challenge was unsuccessful.

On March 10, L&I set aside its December 18 order and reopened Mr. Huizar's claim for authorized treatment and benefits effective January 1, 1986.

On April 29, 1987, the Board granted Boise Cascade's appeal and directed further proceedings. At those proceedings, the parties agreed the spinal fusion was a nonemer-

gent or elective surgery and Dr. Orvald had not obtained authority from either Boise Cascade or L&I prior to performing it.

An industrial appeals judge (IAJ) subsequently entered a proposed decision and order finding that Mr. Huizar's injury, related to the industrial injury, had become aggravated between April 18, 1984, and March 10, 1987, and concluding he was in need of further treatment. The IAJ concluded L&I's March 10, 1987, order reopening his claim should be affirmed. Boise Cascade's petition for review was denied. The Board adopted the proposed decision and order. Boise Cascade appealed to superior court.

On July 7, 1989, the Superior Court affirmed the Board's March 28, 1988, order. The matter was remanded to L&I with directions to reopen the claim. Boise Cascade was directed to pay time-loss compensation and permanent partial disability adjusted for prior awards. The claim was to be closed without any further award of benefits.

On August 2, 1989, Boise Cascade received Dr. Orvald's billing for Mr. Huizar's surgery. Boise Cascade refused to pay on the grounds the surgery was unauthorized and it was the first time it received any billing. Dr. Orvald's office responded with a letter stating his office received a letter from Boise Cascade in January 1987, indicating it was appealing L&I's decision to close Mr. Huizar's claim and if unsuccessful, it would be responsible for medical costs. The letter also stated a billing had been sent to Boise Cascade in January 1987. Boise Cascade denied receiving any billing in January. However, both agreed a billing was not sent within 90 days of the surgery.

On September 29, 1989, L&I directed Boise Cascade to deny payment for Mr. Huizar's surgery because of lack of prior authorization, WAC 296-20-03001(2), and because the billing was not received within 90 days of the surgery, former WAC 296-20-125(5).[1] Dr. Orvald protested and requested

---

[1]Former WAC 296-20-125(5) provides:

"Vendors are urged to bill on a monthly basis. Bills must be received within ninety days of service to be considered for payment."

reconsideration. L&I reconsidered, reversed its decision, and directed Boise Cascade to pay the surgery charges. Boise Cascade appealed to the Board. The Board affirmed the L&I order.

The Board's decision was appealed to superior court by Boise Cascade, and was consolidated for hearing with the appeal of Dewayne L. Wentz.

### Dewayne L. Wentz Claim

On July 9, 1987, Mr. Wentz injured his cervical spine during the course of employment with Boise Cascade. Prior to the industrial injury, Mr. Wentz suffered from degenerative disc disease in his cervical spine, although at the time of the injury, the disease was asymptomatic. Mr. Wentz submitted a written accident report to his employer on March 5, 1988, and Boise Cascade authorized treatment only for the injury on March 8, 1988.

On August 3, 1988, Mr. Wentz was seen by neurosurgeon Leslie Bornfleth. Dr. Bornfleth reported that the apraxia and clumsiness he observed in Mr. Wentz appeared to be something in the spinal cord and not due to a specific nerve root syndrome. He indicated he would review his cervical spine films and order an MRI (magnetic resonance image). He did not recommend surgery.

On August 17, 1988, Mr. Wentz was involved in an automobile collision involving a horse. As a result, he sustained a low back injury.

Mr. Wentz sought evaluation and treatment from Dr. Todd Orvald on December 23, 1988, for bilateral hand numbness and lumbar and cervical spine problems. Dr. Orvald thought Mr. Wentz had a degenerative process in his cervical spine for years and the degeneration was not caused by the industrial accident.

On February 28, 1989, Mr. Wentz was evaluated by Dr. James Haven, a partner of Dr. Orvald. He concluded that Mr. Wentz probably had cervical disc disease, but did not know if it was related to the industrial accident.

In a chart note dated April 14, 1989, Dr. Orvald stated he told Mr. Wentz he should consider surgery and recom-

mended a second opinion, and sent this note to Boise Cascade. Boise Cascade wrote Mr. Wentz on April 14, 1989, confirming his statement that he was going to have surgery and explaining it could not be authorized without a second opinion by an independent medical examiner. Mr. Wentz was also advised that if surgery were performed before that examination, Boise Cascade would not be responsible for payment. Boise Cascade also wrote Dr. Orvald a letter stating no payment would be made for the surgery without a second surgical consultation and asking him to respond to a prior request for information regarding Mr. Wentz' condition and its relationship to the industrial accident.

Without receiving authorization from Boise Cascade or L&I, Dr. Orvald performed cervical spine surgery on May 18, 1989. It was admittedly nonemergent and elective. L&I directed Boise Cascade to deny responsibility for the surgery and any residual effects arising from it on the basis of failure to show a causal relationship between the industrial injury and the surgery and failure to comply with WAC 296--20-03001(2).

Mr. Wentz protested L&I's decision. L&I affirmed and Mr. Wentz appealed to the Board. The Board reversed and Boise Cascade appealed to superior court after unsuccessfully petitioning for review.

Mr. Huizar, Mr. Wentz, and Boise Cascade filed motions for summary judgment. Boise Cascade's motion was denied. The motions of Mr. Huizar and Mr. Wentz were granted. Boise Cascade timely filed this appeal.

### STANDARD OF REVIEW

■ Boise Cascade appeals the denial of its motion for summary judgment and the granting of summary judgment in favor of Mr. Huizar and Mr. Wentz. Since the Board's findings are not contested, the sole issues are questions of law. *See Risher v. Department of Labor & Indus.*, 55 Wn.2d 830, 837, 350 P.2d 645 (1960). Questions of law are reviewed de novo. *Mains Farm Homeowners Ass'n v. Worthington*, 121 Wn.2d 810, 813, 854 P.2d 1072 (1993).

## PRIOR AUTHORIZATION

Boise Cascade contends it is not responsible for the costs of either surgery because the claimants and their attending physicians did not obtain prior authorization as required by WAC 296-20-03001. That rule states:

> (2) The department may designate those inpatient hospital admissions that require prior authorization.
>
> . . . .
>
> (15) The department may designate those diagnostic and surgical procedures which can be performed in other than a hospital inpatient setting. Where a worker has a medical condition which necessitates a hospital admission, prior approval of the department or self-insurer must be obtained.

The term "authorization" was not defined by regulation at the time either claimant underwent the surgical procedures at issue. It is now defined in WAC 296-20-01002 as "[n]otification by a qualified representative of the department or self-insurer that specific medically necessary treatment, services, or equipment provided for the diagnosis and curative or rehabilitative treatment of an accepted condition will be reimbursed by the department or self-insurer." The lack of a regulatory definition of authorization at the time in question is not determinative because the record clearly establishes as a matter of undisputed fact that Boise Cascade did not in any way approve, authorize or agree to be responsible for the payment of either surgery prior to the time it was performed. The surgeries were not, as a matter of law, "authorized" or "approved" for purposes of WAC 296-20-03001(2), (15).

### Claim of Mr. Huizar

Mr. Huizar contends the requirements of WAC 296-20-010 *et seq.* provide an overall scheme of procedures to be followed in administering open claims. However, when a self-insured is resisting responsibility for administering a claim, it is unrealistic to expect the self-insured to "authorize" or accept responsibility for any medical procedure.

L&I takes a somewhat similar position. It contends WAC 296-20-097, which governs the reopening of claims, contemplates the factual situation at issue and abrogates or super-

sedes the prior authorization requirement of WAC 296-20-
-03001. That regulation specifically states:

> Necessary treatment should not be deferred pending a depart-
> ment or self-insurer adjudication decision. However, should re-
> opening be denied treatment costs become the financial respon-
> sibility of the worker.

L&I urges us to adopt a commonsense approach because
requiring prior authorization under the circumstances of a
contested reopening of a claim "would be both meaningless
and contrary to the spirit of the Industrial Insurance Act".
Br. of Resp't L&I, at 13.

The contentions of Mr. Huizar and L&I have merit.
Rules should be construed to be in harmony with each other
and each given effect if possible. *See State v. Burke*, 92 Wn.2d
474, 598 P.2d 395 (1979). Rules should also be interpreted in
a manner consistent with the legislative purpose of the
underlying statute. *Moses v. Department of Social & Health
Servs.*, 90 Wn.2d 271, 274, 581 P.2d 152 (1978). We hold that
WAC 296-20-03001 does not apply to a closed claim when a
reopening of that claim is contested by a self-insured. WAC
296-20-097 controls. Our holding gives each rule effect.
*Burke.* It also fulfills the purpose of the Industrial Insurance
Act, which act is to "be liberally construed for the purpose
of reducing to a minimum the suffering and economic loss
arising from injuries and/or death occurring in the course of
employment." RCW 51.12.010.

As to the timeliness of the billing, Dr. Orvald had been
informed that Boise Cascade was asking L&I not to reopen
Mr. Huizar's claim. He did not know who would ultimately
be responsible for payment of his services. There was no
final adjudication of Mr. Huizar's claim until the Superior
Court affirmed the Board's decision requiring that his claim
be reopened. The determination was made on July 7, 1989.
Boise Cascade received Dr. Orvald's bill on August 2, 1989.
RCW 51.36.085 requires payment for allowed claims 60 days
after the claim is allowed by final order or judgment.

The trial court did not err in granting summary judgment
in favor of Mr. Huizar.

## Claim of Mr. Wentz

Mr. Wentz' claim was open at the time his surgery was performed and there is no issue as to the timeliness of the billing. The legal issue is whether payment of a contested open claim can be denied pursuant to WAC 296-20-03001(2) and WAC 296-20-03001(15), which requires that a claimant obtain prior authorization for specified types of medical treatment.

Although L&I directed Boise Cascade to deny responsibility for Mr. Wentz' surgery because it determined no causal relationship between the industrial injury and the surgery had been shown and Dr. Orvald had not requested prior authorization, the Board reversed. As stated in the Board decision:

> Dr. Orvald's letters to the self-insured employer, dated March 30, 1989 and April 25, 1989, when considered together contain medical information sufficient to relate the claimant's need for surgery to the industrial injury of July 9, 1987. These letters communicate in clear terms the physician's conclusion that the claimant's problem with his upper right extremity is related to cervical injury. The factors of supporting Dr. Orvald's diagnosis were examined in depth at the hearing. The claimant has met the burden of establishing a causal relationship between the condition treated in the cervical surgery of May 18, 1989 and the industrial injury of July 9, 1987. . . .
>
> . . . .
>
> There remains the matter of communication . . . required by WAC 296-20-03001 . . . Dr. Orvald's letters of March 30, 1989 and April 15, 1989, to the self-insured employer, contain much of the information. The letter of March 30, 1989 also recites that it encloses the doctor's office notes on Mr. Wentz. Dr. Orvald testified these notes contain detailed information regarding Mr. Wentz's condition. Further, consulting medical opinions were obtained prior to the surgery.

The Board entered the following finding:

> 5. Prior to issuing its letters of April 14, 1989, to the claimant and Dr. Orvald, the self-insured employer understood that the claimant and his attending physician sought the employer's approval pursuant to workers' compensation requirements for surgery to correct the claimant's cervical condition, which the doctor believed to be caused by the July 9, 1987 industrial injury. The employer did not accept responsibility for the surgery.

At summary judgment, L&I informed the court that it paid for surgeries without prior authorization when there was litigation. L&I explained:

> It is the Department's policy and practice to pay for the costs of surgery when the Department has . . . denied responsibility for the cost of that surgery . . . and later litigation shows that the Department wrongfully denied that.
>
> Our reason for doing that is because it is somewhat of a nonsensical proposition to assume that the Department or a self-insured employer would authorize surgery when the need for that surgery or the responsibility of the Department or the self-insured employer were currently under litigation. If that surgery was authorized, it would be a very open admission that the surgery was causally related to the industrial injury, or the need for the surgery was, and that the surgery was medically necessary.

Since L&I promulgated the rule at issue, deference is accorded L&I's construction of it. *Cf. Mall, Inc. v. Seattle*, 108 Wn.2d 369, 378, 739 P.2d 668 (1987).

As Boise Cascade points out, courts are not to construe a regulation which is clear and unambiguous. *See Harris v. Department of Labor & Indus.*, 120 Wn.2d 461, 474, 843 P.2d 1056 (1993). However, if a claimant can establish that he or she notified L&I or the self-insured of the need for medical treatment and supplied information pertinent to a determination of whether the treatment was causally connected to the industrial injury, neither L&I nor the self-insured can use its lack of prior authorization as a basis for denying payment for services later found to be medically necessary and causally connected to the industrial injury. To conclude otherwise would be contrary to the express purpose and intent of the Industrial Insurance Act. *Cf. Barrie v. Kitsap Cy.*, 93 Wn.2d 843, 859, 613 P.2d 1148 (1980). If we were to adopt Boise Cascade's reasoning, L&I or the self-insured could avoid paying any medical bill by simply refusing to authorize the requested treatment.

Here, the Board found that before he was treated, Mr. Wentz provided information to the self-insured which was sufficient for the self-insured to determine whether the treatment was medically necessary and causally connected

to the industrial injury. Since error has not been assigned to the findings, they are verities on appeal. Had the Board found the treatment was not medically necessary, or was not causally related to the industrial injury, or the information provided to the self-insured was deficient, the costs of treatment would have been the responsibility of the claimant.

The trial court did not err in granting summary judgment in favor of Mr. Wentz.

SWEENEY and SCHULTHEIS, JJ., concur.