[No. 62544-6-I.   Division One.   July 6, 2009.]

LISA A. ROGERS, *Appellant*, v. THE DEPARTMENT OF LABOR AND INDUSTRIES, *Respondent*.

*Brian L. Stiles* (of *Stiles & Stiles, Inc., PS*), for appellant.
*Robert M. McKenna, Attorney General,* and *Sarah L. Martin, Assistant,* for respondent.

¶1 DWYER, J. — Following an on-the-job injury, Lisa Rogers requested that the Department of Labor and Indus-

tries (Department) authorize payment for spinal fusion surgery. The Department denied this request, concluding that the surgery was unlikely to be successful. Rogers did not challenge the Department's determination but, instead, proceeded with the surgery without authorization. The surgery was unsuccessful. Rogers nonetheless sought reimbursement from the Department, contending that the surgery constituted "proper and necessary" medical care under the Industrial Insurance Act.[1] The Department denied the reimbursement request. Both the Board of Industrial Insurance Appeals and the superior court affirmed the denial. Holding that substantial evidence supports the superior court's finding that the unauthorized surgery was neither curative nor rehabilitative and, thus, not subject to reimbursement, we also affirm.

I

¶2 Although the parties dispute factual issues regarding Rogers' need for surgery, they essentially agree on the facts leading up to Rogers' claim with the Department for reimbursement.[2]

¶3 Rogers slipped and fell while at work, injuring herself. As a result, she developed persistent pain in her lower back. Dr. Sanford Wright diagnosed her as suffering from a herniated disc and performed surgery on her spine. Dr. Wright operated again four days later. Both surgeries were preauthorized and paid for by the Department. Both were unsuccessful.

¶4 After experiencing a coughing fit several months later, Rogers' back pain became constant and severe, and she was again hospitalized. Dr. Wright requested that the Department authorize payment for a third surgery for Rogers, a spinal fusion.

---

[1] Title 51 RCW. Specifically, see RCW 51.36.010.

[2] Rogers assigns no error to the majority of the trial court's factual findings. Accordingly, they are verities on appeal. *Dep't of Labor & Indus. v. Allen*, 100 Wn. App. 526, 530, 997 P.2d 977 (2000).

¶5 The Department denied authorization. In later testimony, the Department's medical director, Dr. Gary Franklin, testified that Rogers' medical records failed to show that Rogers' condition met the Department's guidelines for authorizing spinal fusion surgery. Specifically, according to Dr. Franklin, the records submitted to the Department failed to show that Rogers' spine was subject to instability, justifying fusion. Although Dr. Franklin admitted on cross-examination that Rogers' records contained mention of a "bilateral [P]ars defect" that could have caused that level of instability in Rogers' vertebrae, he also opined that Rogers' chronic pain may well have been caused instead by the scarring that resulted from her two previous surgeries and that spinal fusion would not be effective in treating that condition.

¶6 Dr. Franklin also observed that Rogers' medical records indicated that she had at least four of the six relative contraindications listed in the Department's spinal fusion guidelines, including presently smoking cigarettes, having had two prior failed spinal surgeries, having multiple-level degenerative disease of the lumbar spine, and having been disabled for greater than 12 months prior to considering the fusion.

¶7 This rationale was not described in detail in the Department's letter denying authorization. Rather, the letter simply stated that the company used by the Department to analyze claims, Qualis Health, had determined that "the requested procedure [did] not meet department guidelines." Notwithstanding the absence of detailed information, however, Rogers declined to engage in medical consultation with the Department regarding the possible misapplication of the guidelines. Rather, when a Qualis representative contacted Dr. Wright to gather additional information—requesting a "physician-to-physician discussion"—Dr. Wright declined to provide additional information in support of the surgery.

¶8 Instead, he informed the Qualis representative that "payment for the hospitalization, including surgery, was

being obtained through Ms. Rogers' private insurance." Based on this, the Department accepted Qualis's recommendation and denied authorization for the surgery.

¶9 Rogers was aware that the Department had denied authorization. She nonetheless elected to have the surgery.

¶10 There is no dispute as to whether the surgery was successful. It was not. Rogers herself testified, "I haven't really progressed well at all. I have been running into a few complications. . . . I've [been] unable to get better." When asked whether her symptoms had improved, she replied, "They're worse now. . . . They're constant."

¶11 The surgery was paid for by a private insurer. In spite of this, Rogers requested additional reimbursement from the Department.[3] The Department denied this request, based on Dr. Wright's refusal to engage in further medical consultation in support of the surgery and the related conclusion that "there was insufficient clinical evidence to support the procedure."

¶12 Rogers then requested that the Department reconsider its reimbursement decision. The Department denied this request as well. Rogers appealed. Based on the unsuccessful outcome of the surgery, an industrial appeals judge affirmed, concluding as a matter of law that "Ms. Rogers' . . . low back surgery was not proper and necessary medical treatment within the meaning of RCW 51.36.010 and WAC 296-20-01002."

¶13 Rogers sought review of the industrial appeals judge's decision by the Board of Industrial Insurance Appeals (Board). Adopting the industrial appeals judge's decision, the Board also affirmed the Department's denial.

¶14 Rogers then appealed the Board's decision to the superior court, which also affirmed. The court's decision essentially adopted the decision entered by the Board, with

---

[3] At oral argument in this court, Rogers' attorney stated that Rogers sought additional reimbursement from the Department because payments from her private insurer only partially, rather than completely, covered the cost of the surgery.

the exception of characterizing as a factual finding rather than a legal conclusion the determination that Rogers' spinal fusion surgery did not constitute "proper and necessary" medical treatment.[4]

¶15 Rogers now appeals from the judgment of the superior court.

## II

¶16 Because the proper standard of review is material here and because that standard has been inconsistently articulated, it merits brief discussion.

¶17 Washington's Industrial Insurance Act includes judicial review provisions that are specific to workers' compensation determinations. In particular, the act provides that superior court review of a Board determination is de novo, that it includes the right to a jury trial, and that the party seeking review bears the burden of showing that the Board's decision was improper:

> The hearing in the superior court shall be de novo, but the court shall not receive evidence or testimony other than, or in addition to, that offered before the board or included in the record filed by the board in the superior court as provided in RCW 51.52.110 .... In all court proceedings under or pursuant to this title the findings and decision of the board shall be prima facie correct and the burden of proof shall be upon the party attacking the same. If the court shall determine that the board has acted within its power and has correctly construed the law and found the facts, the decision of the board shall be confirmed; otherwise, it shall be reversed or modified.

RCW 51.52.115. Thus, the *superior court* (or the jury,[5] where one is empanelled) applies the standards set forth in RCW 51.52.115:

---

[4] The court also entered as a conclusion of law that "Ms. Rogers' . . . low back surgery was not proper and necessary medical treatment within the meaning of RCW 51.36.010 and WAC 296-20-01002." In other words, the superior court made this ruling *both* as a finding of fact and as a conclusion of law.

[5] *See* 6A Washington Practice: Washington Pattern Jury Instructions: Civil 155.03 (5th ed. 2005).

The Board's decision is prima facie correct under RCW 51.52.115, and a party attacking the decision must support its challenge by a preponderance of the evidence. On review, the superior court may substitute its own findings and decision for the Board's only if it finds "from a fair preponderance of credible evidence, that the Board's findings and decision are incorrect."

*Ruse v. Dep't of Labor & Indus.*, 138 Wn.2d 1, 5, 977 P.2d 570 (1999) (citations and internal quotation marks omitted) (quoting *McClelland v. ITT Rayonier, Inc.*, 65 Wn. App. 386, 390, 828 P.2d 1138 (1992)). In appeals of the superior court's decision to this court, by contrast, "[w]e review whether substantial evidence supports the trial court's factual findings and then review, de novo, whether the trial court's conclusions of law flow from the findings." *Watson v. Dep't of Labor & Indus.*, 133 Wn. App. 903, 909, 138 P.3d 177 (2006) (citing *Ruse*, 138 Wn.2d at 5).

¶18 This statutory review scheme results in a different role for the Court of Appeals than is typical for appeals of administrative decisions pursuant to, for example, the Administrative Procedure Act,[6] where we sit in the same position as the superior court.[7] To be clear, unlike in those cases, our review in workers' compensation cases is akin to our review of any other superior court trial judgment: " 'review is limited to examination of the record to see whether substantial evidence supports the findings made after the superior court's de novo review, and whether the court's conclusions of law flow from the findings.' " *Ruse*, 138 Wn.2d at 5 (quoting *Young v. Dep't of Labor & Indus.*, 81 Wn. App. 123, 128, 913 P.2d 402 (1996)). More extensive appellate review of facts found in the superior court abridges the jury trial right provided by RCW 51.52.115:

Our function is to review for sufficient or substantial evidence, taking the record in the light most favorable to the party who prevailed in superior court. We are not to reweigh or rebalance

---

[6] Ch. 34.05 RCW.

[7] *See, e.g.*, *Mills v. W. Wash. Univ.*, 150 Wn. App. 260, 267, 208 P.3d 13 (2009).

the competing testimony and inferences, or to apply anew the burden of persuasion, for doing that would abridge the right to trial by jury.

*Harrison Mem'l Hosp. v. Gagnon*, 110 Wn. App. 475, 485, 40 P.3d 1221 (2002) (footnotes omitted). The Industrial Insurance Act itself encapsulates this rationale, providing that "[a]ppeal shall lie from the judgment of the superior court *as in other civil cases*." RCW 51.52.140 (emphasis added).

¶19 All of this is significant because Rogers frames her appeal simply as a challenge to whether the Department's initial denial of authorization was factually justified. But Rogers incorrectly describes our inquiry. We do not review the trial court's factual determinations de novo, much less place ourselves in the position of the Department physicians who evaluate medical records in the first instance.

## III

■ ¶20 Understood correctly, Rogers' appeal amounts to a contention that the trial court's finding that her unauthorized spinal fusion surgery did not constitute a "proper and necessary" medical procedure was unsupported by the evidence. In order for the party seeking review to succeed on such a postsurgery claim for reimbursement, he or she must demonstrate that, in hindsight, the procedure was objectively curative or rehabilitative. Rogers fails to make this showing.

¶21 The Industrial Insurance Act requires the Department to reimburse qualified claimants "[u]pon the occurrence of any injury to a worker entitled to compensation under" the Industrial Insurance Act, stating that the worker is entitled to "receive proper and necessary medical and surgical services."[8] RCW 51.36.010. The Medical Aid

---

[8] There is no dispute that Rogers' back injury was work related and, thus, that she might have qualified for medical treatment for the condition under the Industrial Insurance Act.

Rules[9]—the provisions of the Washington Administrative Code addressing medical coverage under the Industrial Insurance Act—define what constitutes "proper and necessary" medical treatment:

(2) Under the Industrial Insurance Act, "proper and necessary" refers to those health care services which are:

(a) Reflective of accepted standards of good practice, within the scope of practice of the provider's license or certification;

(b) Curative or rehabilitative. Care must be of a type to cure the effects of a work-related injury or illness, or it must be rehabilitative. Curative treatment produces permanent changes, which eliminate or lessen the clinical effects of an accepted condition. Rehabilitative treatment allows an injured or ill worker to regain functional activity in the presence of an interfering accepted condition. Curative and rehabilitative care produce long-term changes.

WAC 296-20-01002.

¶22 The Medical Aid Rules also provide, however, that "[c]ertain treatment procedures require authorization by the department or self-insurer" in order to be paid for by the Department. Among those treatments that require prior authorization are those "inpatient hospital admissions" that the Department has specifically determined require prior authorization. WAC 296-20-03001(2). It is undisputed that inpatient spinal fusion surgery requires prior authorization by the Department. The Medical Aid Rules state that "[a]ll services rendered must be in accordance with the medical aid rules, fee schedules, and department policy," and that "[t]he department or self-insurer may reject bills for services rendered in violation of" the Medical Aid Rules. WAC 296-20-125.

¶23 Although this regulatory framework unambiguously allows the Department to refuse to reimburse claimants for medical procedures undertaken without required preauthorization—i.e., medical procedures that the Depart-

---

[9] Ch. 296-20 WAC.

ment itself determines do not constitute "proper and necessary" medical care—a judicial exception has been engrafted upon it. In *Boise Cascade Corp. v. Huizar*, 76 Wn. App. 676, 887 P.2d 417 (1994), we examined two consolidated cases in which claimants underwent surgery without obtaining the required authorization from either their self-insured employer, Boise Cascade Corporation, or the Department. In both cases, the Board of Industrial Insurance Appeals required Boise Cascade to provide reimbursement, notwithstanding the lack of authorization, and Boise Cascade appealed. *Boise Cascade*, 76 Wn. App. at 678.

¶24 Based on the Department's own policy of paying claims for procedures that later litigation had shown were necessary and also based on the fact that, by holding otherwise, the Department "could avoid paying any medical bill by simply refusing to authorize the requested treatment," we held that the self-insured could not escape paying simply because the surgery had not been authorized:

> [I]f a claimant can establish that he or she notified [the Department] or the self-insured of the need for medical treatment and supplied information pertinent to a determination of whether the treatment was causally connected to the industrial injury, neither [the Department] nor the self-insured can use its lack of prior authorization as a basis for denying payment for services later found to be medically necessary and causally connected to the industrial injury. To conclude otherwise would be contrary to the express purpose and intent of the Industrial Insurance Act.

*Boise Cascade*, 76 Wn. App. at 686 (citing *Barrie v. Kitsap County*, 93 Wn.2d 843, 859, 613 P.2d 1148 (1980)).

¶25 Our *Boise Cascade* opinion was consistent with prior significant decisions of the Board.[10] In particular, in *In re Krawiec*, No. 90 2281, 1991 WL 281081, 1991 WA Wrk.

---

[10] "Although the Board's decisions are not binding on the courts, it is appropriate for us to consider the Board's interpretation of the laws it is charged with enforcing, in addition to the relevant case law." *Puget Sound Energy, Inc. v. Lee*, 149 Wn. App. 866, 888, 205 P.3d 979 (2009).

Comp. LEXIS 55 (Wash. Bd. of Indus. Ins. Appeals Oct. 17, 1991), the Board relied upon hindsight analysis to determine whether an unauthorized back surgery had constituted "proper and necessary" medical care, notwithstanding the Department's lack of prior authorization:

> We will act with the advantage of hindsight and allow this surgery where the claimant has proven by a preponderance of the credible medical evidence, some of it based on objective findings, that the surgery was medically necessary. We recognize that the Department of Labor and Industries, however careful, deliberate, and well intentioned, will err from time to time in evaluating a given claimant's need for surgery. To fail to provide recourse for the claimant and physician who proceed with a successful surgery, despite an absence of authorization and/or a consulting opinion, is to place simplistic, mechanical adherence to the medical aid rules above the requirement that the Industrial Insurance Act be liberally construed. Such a purely mechanical approach is ill founded and will not be followed here.

*Krawiec*, 1991 WL 281081, at *4, 1991 WA Wrk. Comp. LEXIS 55.

¶26 Subsequent decisions, both ours and the Board's, have uniformly followed this hindsight method of analysis. *See Roller v. Dep't of Labor & Indus.*, 128 Wn. App. 922, 928, 117 P.3d 385 (2005) (reversing Department's failure to reimburse where medical treatment had "proven to be rehabilitative by decreasing [the claimant's] pain and improving his functionality"); *accord In re Pleas*, No. 96 7931, 1998 WL 718232, at *6, 1998 WA Wrk. Comp. LEXIS 153 (Wash. Bd. of Indus. Ins. Appeals Aug. 31, 1998) ("determination that surgical treatment was medically proper and necessary may be based on '20-20 hindsight' provided from findings of the surgery itself").

¶27 Here, the Department determined that spinal fusion surgery was unlikely to be curative or rehabilitative, and so declined to authorize the surgery. Instead of challenging this determination by providing additional evidence *before*

*undergoing surgery*, Rogers simply elected to proceed with the surgery without authorization.[11]

¶28 The law is clear that when an industrial insurance claimant undertakes a medical procedure that requires Department authorization, any claim for *postsurgery* reimbursement is contingent upon a showing that the treatment was proper and necessary. The law is equally clear that this means demonstrating, in hindsight, that the treatment was curative or rehabilitative. WAC 296-20-01002; *Boise Cascade*, 76 Wn. App. at 686; *Pleas*, 1998 WL 718232, at *6, 1998 WA Wrk. Comp. LEXIS 153.

¶29 Rogers fails to demonstrate that her surgery was either curative or rehabilitative. Indeed, her own testimony established that the surgery was a failure. This being so, she fails to demonstrate that the trial court's factual finding that the spinal fusion surgery did not constitute proper and necessary medical care was unsupported by substantial evidence. Thus, she also fails to demonstrate that she is entitled to be reimbursed for the cost of the surgery.

¶30 Affirmed.

SCHINDLER, C.J., and AGID, J., concur.

Review denied at 167 Wn.2d 1015 (2009).

---

[11] Rogers devotes most of her argument on appeal to contending that the information that she *did* provide to the Department required that it conclude that her medical condition warranted spinal fusion surgery. But this type of argument is not germane to circumstances where a claimant proceeds with a nonemergency surgery absent required Department authorization. In such circumstances, the claimant bets the outcome of the desired medical procedure against the chance that the Department's initial evaluation was correct.

Had Rogers wished such contentions to be analyzed under a different standard, the proper procedure would have been for Dr. Wright to consult with department physicians in support of his recommendation and, if that failed, for Rogers to challenge the Department's initial determination *before* undergoing surgery.