# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| CLARK CONSTRUCTION GROUP, INC., | ) | DIVISION ONE |
| | ) | |
| Appellant, | ) | No. 72816-4-I |
| | ) | |
| DEPARTMENT OF LABOR AND INDUSTRIES FOR THE STATE OF WASHINGTON, | ) | |
| | ) | UNPUBLISHED OPINION |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| ROLAND ANDERSON, | ) | |
| | ) | |
| Respondent. | ) | FILED: September 21, 2015 |
| | ) | |

DWYER, J. — When the superior court reviews a decision of the Board of Industrial Insurance Appeals, our review on appeal is limited to whether substantial evidence supports the trial court's factual findings and whether those findings support its conclusions.[1] Viewing the evidence in the light most favorable to the claimant, who prevailed in superior court, substantial evidence supports the superior court's finding that further proper and necessary medical care was needed after the Department of Labor & Industries closed the worker's compensation claim. Nothing in the record before us indicates that the superior

---

[1] Rogers v. Dep't of Labor & Indus., 151 Wn. App. 174, 180, 210 P.3d 355 (2009).

court failed to apply the correct legal standards in reaching its determination. Accordingly, we affirm.

I

In October 2005, Roland Anderson sustained an injury to his foot and ankle while working as a field superintendent on a road expansion project on Interstate 5. Between 2008 and 2011, podiatrist James Lee treated Anderson for various conditions related to the injury. During this period, Dr. Lee performed five surgical procedures, including a fusion of the interphalangeal joint of Anderson's left big toe in October 2010.

On December 23, 2011, the Department of Labor & Industries (the Department) closed Anderson's workers' compensation claim with a permanent partial disability award. On February 23, 2012, the Department affirmed its December 2011 closure order. Approximately two months later, in April 2012, based on Anderson's continuing symptoms and evidence that the 2010 joint fusion procedure had failed, another physician, orthopedic surgeon Jeff Mason, performed a second procedure to fuse the interphalangeal joint.

Meanwhile, Anderson appealed the Department's claim closure order. In October 2012, a judge of the Board of Industrial Insurance Appeals considered evidence, including the deposition testimony of four physicians and one psychologist, and the live testimony of Anderson and his former spouse. The judge issued a proposed decision and order. Characterizing the correctness of the closure order prior to Anderson's final surgery as a difficult question, the judge found that Anderson's condition was medically fixed and stable as of

2

December 28, 2011 and that no further surgical procedure was warranted. The Board affirmed the decision.[2]

On appeal, the Snohomish County Superior Court, after a bench trial on the administrative evidentiary record, reversed the Board's decision. The superior court found that, as of the December 2011 claim closure date, "Mr. Anderson's conditions proximately caused by the industrial injury were not fixed and stable and required further proper and necessary treatment, including a re-fusion of the interphalangeal joint of the left great toe." Based on this factual finding, the court concluded that Anderson "required, and was entitled to, further necessary and proper treatment" after the claim closure date and that his "injury-related conditions were not fixed and stable" as of that date.

The employer, Clark Construction Group, Inc., filed a motion for reconsideration. The superior court denied the motion. The employer appeals.[3]

II

The employer challenges the superior court's finding that the 2012 surgery to fuse the interphalangeal joint was necessary and proper medical treatment, claiming that the finding is unsupported by substantial evidence in the record.

Washington's Industrial Insurance Act, Title 51 RCW, "includes judicial review provisions that are specific to workers' compensation determinations." Rogers v. Dep't of Labor & Indus., 151 Wn. App. 174, 179, 210 P.3d 355 (2009). According to those provisions, the superior court conducts a de novo review of

---

[2] The Board amended the Department's order by changing the claim closure date from December 23, 2011 to December 28, 2011, the date on which Anderson's physician provided him with an orthotic device.

[3] The Department did not participate in Anderson's appeal to the superior court and is not a participant in the proceedings before this court. See RCW 51.52.110.

3

the Board's decision, relying exclusively on the record before the Board. RCW 51.52.115; Rogers, 151 Wn. App. at 179. On appeal to the superior court, the Board's decision is prima facie correct, and the party challenging the Board's decision must support its challenge by a preponderance of the evidence. RCW 51.52.115; Ruse v. Dep't of Labor & Indus., 138 Wn.2d 1, 5, 977 P.2d 570 (1999). This presumption requires the findings of the Board to stand if the superior court, as the trier of fact, finds the evidence to be in equipoise. Allison v. Dep't of Labor & Indus., 66 Wn.2d 263, 268, 401 P.2d 982 (1965).

We review the superior court's decision according to the ordinary standard of review for civil cases, reviewing whether substantial evidence supports the trial court's factual findings and, if so, whether the trial court's conclusions of law flow from those findings. RCW 51.52.140; Ruse, 138 Wn.2d at 5. A factual finding is supported by substantial evidence "when the evidence in the record is sufficient to persuade a rational, fair-minded person that the finding is true." Watson v. Dep't of Labor & Indus., 133 Wn. App. 903, 909, 138 P.3d 177 (2006). We do not reweigh or rebalance the competing testimony and inferences, or apply anew the burden of persuasion. Rogers, 151 Wn. App. at 180-81. Furthermore, in carrying out this review, we view the record in the light most favorable to the party who prevailed in superior court. Harrison Mem'l Hosp. v. Gagnon, 110 Wn. App. 475, 485, 40 P.3d 1221 (2002). Thus, we view the evidence in the light most favorable to Anderson.

The Industrial Insurance Act requires the Department or self-insured employer to reimburse qualified claimants "[u]pon the occurrence of any injury to

a worker entitled to compensation . . . ." RCW 51.36.010(2)(a). Compensation is required for all "proper and necessary medical and surgical services . . . ." RCW 51.36.010(2)(a). The statute does not define "proper and necessary," but the Washington Administrative Code, which regulates medical coverage under the Industrial Insurance Act, states that proper and necessary health care services are those

> of a type to cure the effects of a work-related injury or illness [curative], or . . . rehabilitative. Curative treatment produces permanent changes, which eliminate or lessen the clinical effects of an accepted condition. Rehabilitative treatment allows an injured or ill worker to regain functional activity in the presence of an interfering accepted condition. Curative and rehabilitative care produce long-term changes.

WAC 296-20-01002.

The Department or self-insured employer may stop paying for medical services when the worker reaches maximum medical improvement or, in other words, becomes "fixed and stable":

> The department or self-insurer stops payment for health care services once a worker reaches a state of maximum medical improvement. Maximum medical improvement occurs when no fundamental or marked change in an accepted condition can be expected, with or without treatment. Maximum medical improvement may be present though there may be fluctuations in levels of pain and function. A worker's condition may have reached maximum medical improvement though it might be expected to improve or deteriorate with the passage of time. Once a worker's condition has reached maximum medical improvement, treatment that results only in temporary or transient changes is not proper and necessary. "Maximum medical improvement" is equivalent to "fixed and stable."

WAC 296-20-01002.

Herein, the employer contends that the evidence before the superior court does not support its determination that the second fusion procedure was proper and necessary because only Dr. Mason, who performed the surgery, concluded that Anderson required additional surgical treatment after December 28, 2011. The employer claims that Dr. Mason's opinion, standing alone, cannot support the court's finding because Dr. Mason treated Anderson for a brief period, in comparison to Dr. Lee, and did not examine Anderson until after December 2011. The employer also asserts that, in reaching its conclusion, the superior court substituted its own "inappropriate medical analysis" for the expert medical testimony before it.

The employer does not, however, challenge the superior court's finding that the initial "attempted fusion" procedure performed by Dr. Lee was "proper and necessary," but "failed." It is, therefore, undisputed that in 2010 the procedure at issue was curative or rehabilitative and, accordingly, proper and necessary treatment for Anderson's injury-related condition.[4] Indeed, all of the medical experts testified consistent with this finding.[5]

In light of clinical findings indicating a non-fused joint following the 2010 surgery and Anderson's continuing reports of pain in the joint, both Dr. Lee and

---

[4] Although it does not assign error to this finding, the employer correctly points out that the finding, drafted by Anderson's counsel, contains a typographical error and states that the initial fusion procedure took place in October 2012, instead of October 2010. However, considering the court's findings as a whole, including Finding of Fact 2, it is amply clear that the court's ultimate determination was based on an accurate understanding of the timeline of events.

[5] As the judge of the Board noted in her proposed decision, only Dr. Eugene Toomey, the physician who performed an independent medical examination in 2011, was unwilling to concede that the 2010 surgery did not achieve a complete fusion of the joint.

orthopedic surgeon Michael Brage considered the option of repeat surgery.[6] But, after considering the independent medical examination report and viewing surveillance video footage taken over the course of several days during the summer of 2011, Dr. Lee concluded that the clinical findings did not warrant a second procedure. The video primarily consisted of several short segments showing Anderson walking without a distinct limp, and apparently without pain.[7] The video also depicted Anderson, assisted by others, moving a refrigerator. Dr. Brage, who initially recommended a repeat fusion procedure to eliminate pain caused by the non-fused joint, testified that, after viewing portions of the surveillance video, he agreed with the opinion of Dr. Lee that Anderson "seem[ed] fixed and stable."

On the other hand, viewing the video did not cause Dr. Mason to discount Anderson's complaints of pain. Dr. Mason noted that Anderson walked without a significant limp in the office and that doing so for brief periods was not inconsistent with Anderson's reports of pain. He also expressed the opinion that moving a refrigerator or intermittently working on other home projects was not inconsistent with Anderson's complaints. And while he agreed with Dr. Lee, Dr. Brage likewise acknowledged that Anderson walked "fairly normally" upon examination, that Anderson probably had "good days and bad days" with regard to pain, and that the video did not demonstrate that Anderson could walk for a prolonged period, as required by his previous work. Dr. Brage specifically

---

[6] In fact, all four testifying experts agreed that fusion would be curative treatment if two conditions were present: non-union of the joint after the first surgery and pain.

[7] The video exhibit is not included in the record on appeal. As the party seeking appellate relief, it was the employer's responsibility to perfect the record. Bulzomi v. Dep't of Labor & Indus., 72 Wn. App. 522, 525, 864 P.2d 996 (1994).

agreed that since a joint fusion procedure is curative and intended to eliminate pain, undergoing such a procedure for a second time would be a "reasonable choice" on Anderson's part.

The superior court's finding that Anderson's condition was not fixed and stable and that the fusion surgery was proper and necessary treatment is supported by the evidence in the record. The court did not engage in inappropriate medical analysis. As the trier of fact, the court was entitled to evaluate the opinions of the medical experts and assess the basis for those opinions. The employer's argument is simply an invitation to reweigh the evidence that is beyond the scope of review.

III

The employer next contends that the superior court failed to apply the correct legal standards when it reviewed the Board's decision. In particular, the employer claims that the court failed to appreciate that the Board's findings are prima facie correct, failed to properly defer to Dr. Lee's opinion as the attending physician, and failed to consider whether, in hindsight, the procedure was successful in order to determine whether it was proper and necessary treatment. The employer contends that the court merely relied on the "simple occurrence" of the later surgery in order to find that Anderson's condition was not fixed and stable prior to the procedure.

Contrary to the employer's assertion, nothing in the record suggests that the superior court misunderstood the standard for reviewing the Board's decision or failed to adequately consider Dr. Lee's opinion. See <u>Intalco Aluminum v. Dep't</u>

8

of Labor & Indus., 66 Wn. App. 644, 654, 833 P.2d 390 (1992) (attending physician's opinion receives special consideration). In a letter to counsel elaborating on the court's view of the evidence and the basis for its decision, the court specifically and expressly stated that it reached its conclusion, "notwithstanding the presumption that the Board's findings and decision are 'prima facie' correct and notwithstanding the special consideration to be given to the testimony of Dr. Lee."

The employer essentially claims that because the court's decision is contrary to Dr. Lee's opinion, the court "failed to give any weight" to it. The employer further argues that Dr. Mason's opinion was not entitled to any special weight because Dr. Mason did not treat Anderson for a significant amount of time.

Dr. Lee was clearly an attending physician, but the attending physician rule does not require the trier of fact to defer to or credit the testimony of the treating physician. Groff v. Dep't of Labor & Indus., 65 Wn.2d 35, 45, 395 P.2d 633 (1964). The fact that the court did not credit Dr. Lee's opinion testimony does not suggest that the court failed to carefully consider the testimony. Moreover, the employer cites no authority to support the assertion that there cannot be more than one treating physician whose opinion is entitled to special consideration or that a specific length of treatment is required for this principle to apply. Importantly, the attending physician rule stems not merely from the length of the doctor's contact with a patient but also from the fact that an attending

physician is not "an expert hired to give a particular opinion consistent with one party's view of the case." Intalco, 66 Wn. App. at 654.

The employer's contention that the superior court could not find that the repeat fusion surgery was proper and necessary without proof that the procedure achieved the intended result is also incorrect. Hindsight analysis allows a party to succeed on a claim for reimbursement when he or she can demonstrate, in hindsight, that the procedure was, in fact, objectively curative or rehabilitative. See Rogers, 151 Wn. App. at 181. This does not mean that a claimant must present unequivocal proof of success to establish that treatment was proper and necessary. For example, here, as explained, the 2010 fusion surgery was undisputedly curative treatment even though three out of the four medical experts agreed that the procedure did not result in a properly fused joint. While evidence that the 2012 procedure had the desired effect of eliminating Anderson's joint pain would have been undoubtedly relevant, the employer points to no authority that requires a determination of proper and necessary treatment to be supported by such evidence.

Moreover, although the employer claims that the second surgery failed, in fact, as the trial court observed, the outcome was not yet evident. Although Anderson testified before the Board that his pain remained unchanged, he also testified about a lengthy recovery process and surgical hardware that still had to be removed. Dr. Mason testified that the joint appeared to be well-fused and he believed Anderson had obtained some benefit already from the procedure.

10

Indeed, no medical expert testified that at the time of Anderson's testimony, six months following the procedure, his pain should have been eliminated.

Substantial evidence supports the superior court's factual findings. The superior court did not misapply the standard of review or otherwise err in determining that Anderson's medical condition was not fixed and stable when the Department closed his workers' compensation claim in December 2011 and that the 2012 fusion procedure was curative or rehabilitative.

Affirmed.

We concur:

Trickey, J.

Dwyer, J.

Cox, J.