IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 32758-2-III |
| | ) | |
| Respondent, | ) | |
| | ) | |
| v. | ) | PUBLISHED OPINION |
| | ) | |
| HOLLY E. SNYDER, | ) | |
| | ) | |
| Appellant. | ) | |

LAWRENCE-BERREY, J. — Holly Snyder appeals the superior court's order

affirming the dismissal of her administrative appeal for lack of jurisdiction. The Office

of Administrative Hearings (OAH) dismissed Ms. Snyder's April 2013 administrative

appeal because Ms. Snyder failed to appeal the Department of Social and Health

Services's (DSHS) April 2011 internal review determination within 30 days of receiving

constructive notice of the determination. Ms. Snyder argues the legislature enacted a

heightened due process standard in chapter 26.44 RCW, and this standard requires her to

receive actual notice of DSHS's internal review determination. She further argues that

because she did not receive actual notice of DSHS's determination, her appeal was

timely. We hold the 30-day appeal period commences on actual or constructive notice of

DSHS's determination letter, and because Ms. Snyder received constructive notice of the determination letter in mid-June 2011, her April 2013 appeal was untimely and properly dismissed for lack of administrative jurisdiction.

## FACTS

On March 19, 2010, Child Protective Services (CPS) received a report alleging that Ms. Snyder had abused or neglected children in her care. CPS investigated the report and found that the alleged abuse or neglect occurred. On March 21, 2011, DSHS sent Ms. Snyder a certified letter to her house on Longfellow Avenue informing her that the allegations of negligent treatment or mistreatment were founded. The basis of the finding was Ms. Snyder's admission that she used a towel to lock the older children in their bedroom at night, purportedly to prevent them from wandering in or out of the apartment and injuring themselves. The letter also stated that Ms. Snyder could request an internal management review of the CPS investigator's founded findings, and the internal review would be concluded about 60 days after the request.

Ms. Snyder, with the assistance of her mother, completed the review request form on April 6, 2011. Ms. Snyder testified that she recalls her mother assisting her because she was in the process of moving from her Longfellow address to her parents' house on Cleveland Street. Despite knowing that she would soon move, Ms. Snyder indicated on

2

the form that DSHS should mail its review decision to her Longfellow address. Ms. Snyder mailed the review request form to DSHS, and DSHS received it on April 8.

Shortly thereafter, Ms. Snyder moved out of her house on Longfellow Avenue and into her parents' house. Ms. Snyder never told DSHS that she moved, nor did she promptly complete a change of address form with the United States Postal Service (USPS). Ms. Snyder explained that she thought she had until the end of the month to move out, and did not anticipate a problem continuing to receive mail for the next few weeks at the Longfellow address.

DSHS management reviewed its investigator's finding of negligent treatment and concluded that the finding was correct. DSHS sent the review outcome to Ms. Snyder by certified mail at the Longfellow address on April 12, 2011. The letter explained that the founded finding was correct. The letter also explained that Ms. Snyder could challenge the finding by requesting an administrative hearing, and that Ms. Snyder needed to send a written request to the OAH within 30 calendar days or she would have no further right to challenge the CPS finding.

Ms. Snyder's assumption that she could receive mail at the Longfellow house for the remainder of April proved wrong. Shortly after she moved out, her former landlord's sister moved in. Ms. Snyder testified about whether she returned to the Longfellow

3

address to check on her mail. Her testimony was unclear. She denied returning to the address to check on her mail, but also testified that her former landlord's sister said that all mail was returned to sender.

USPS attempted to deliver the April 12 review outcome letter to the Longfellow house on April 14, April 21, and April 29. On May 4, USPS returned the letter to DSHS stamped "return to sender." Admin. Record (AR) at 49. DSHS had Ms. Snyder's telephone number and her parents' telephone number, but made no further attempts to contact Ms. Snyder. By the end of April, Ms. Snyder completed a change of address form with USPS.

Two years later, Ms. Snyder applied for a nursing assistant internship, and the internship program denied her because of the prior CPS finding. Ms. Snyder asked DSHS for a copy of her DSHS file and discovered that DSHS management had upheld its investigator's original finding. Ms. Snyder then requested an administrative hearing on April 1, 2013. DSHS moved to dismiss Ms. Snyder's request, arguing that the OAH lacked jurisdiction to give Ms. Snyder a hearing on the merits, given that she did not request a hearing within the 30-day time frame as required by RCW 26.44.125(5) and WAC 388-15-105(3). At the hearing, Ms. Snyder argued that constructive notice of the outcome of the review determination was insufficient, and that RCW 26.44.100 and

4

RCW 26.44.125 require the alleged perpetrator to receive actual notice before the 30-day appeal period commences. The administrative law judge (ALJ) asked Ms. Snyder if she ever called DSHS to determine whether it ever responded to her review request. Ms. Snyder responded, "I did not, sir. . . . I really didn't know what was going on." Clerk's Papers at 36.

On September 10, 2013, the ALJ issued a decision granting DSHS's motion to dismiss for lack of jurisdiction. The ALJ found that it was reasonable for DSHS to attempt to serve Ms. Snyder at the address she had provided shortly before it mailed the review determination to her. Ms. Snyder appealed the ALJ's order to the Board of Appeals (BOA). The BOA held that the ALJ properly dismissed Ms. Snyder's request, given that Ms. Snyder failed to request an adjudicative hearing within the 30-day regulatory and statutory appeal period. The BOA reasoned that DSHS made a reasonable, good faith effort to serve Ms. Snyder, and Ms. Snyder had constructively refused to accept notice. Ms. Snyder sought judicial review in the superior court. The superior court affirmed the BOA's final order. Ms. Snyder appeals to this court.

ANALYSIS

1.  *Standard of Review*

The Washington Administrative Procedure Act (APA), chapter 34.05 RCW,

governs judicial review of agency actions. *Ryan v. Dep't of Soc. & Health Servs.*, 171

Wn. App. 454, 465, 287 P.3d 629 (2012). When reviewing an agency decision, this court

applies the standards of chapter 34.05 RCW directly to the agency's record without regard

to the superior court decision. *Goldsmith v. Dep't of Soc. & Health Servs.*, 169 Wn. App.

573, 584, 280 P.3d 1173 (2012).

Under the APA, Ms. Snyder must demonstrate the invalidity of the agency's

actions. RCW 34.05.570(1)(a). The APA provides nine grounds for invalidating an

agency decision. Ms. Snyder based her appeal to the superior court on two: the BOA

"erroneously interpreted or applied the law," RCW 34.05.570(3)(d), and the BOA's

decision was "in violation of constitutional provisions on its face or as applied." RCW

34.05.570(3)(a). On appeal from the superior court, Ms. Snyder confines her argument to

one of statutory construction.

This court reviews the BOA's legal determinations de novo under an error of law

standard. *Ryan*, 171 Wn. App. at 465. "Where a statute is within the agency's special

expertise, the agency's interpretation is accorded great weight, provided that the statute is

ambiguous." *Id.* However, it is ultimately this court that determines the meaning and purpose of a statute, and this court may substitute its own interpretation of the law when the BOA's interpretation conflicts with the statute. *Id.*

2.  *Whether RCW 26.44.125(5)'s "receiving notice" requirement is met by constructive receipt of DSHS's review determination*

Ms. Snyder argues that the BOA erred in dismissing her case and claims that language in RCW 26.44.100 and RCW 26.44.125 supports a heightened due process standard that requires her actual receipt of DSHS's determination letter.

The fundamental goal of statutory interpretation is to discern and implement the legislature's intent. *State v. J.P.*, 149 Wn.2d 444, 450, 69 P.3d 318 (2003). When interpreting a statute, courts look first to the statute's plain meaning. *State v. Armendariz*, 160 Wn.2d 106, 110, 156 P.3d 201 (2007). "Plain meaning is discerned from the ordinary meaning of the language at issue, the context of the statute in which that provision is found, related provisions, and the statutory scheme as a whole." *Christensen v. Ellsworth*, 162 Wn.2d 365, 373, 173 P.3d 228 (2007).

When DSHS receives a report concerning a possible occurrence of child abuse or neglect, it must investigate the allegation. RCW 26.44.050. Once DSHS completes its investigation, it must notify the alleged perpetrator of its finding. RCW 26.44.100(2). When DSHS seeks to notify alleged perpetrators that the allegations are founded *at this*

*stage of the process*, DSHS must "exercise reasonable, good-faith efforts to ascertain the location of persons entitled to notification." RCW 26.44.100(4); *accord* WAC 388-15-069(1). The alleged perpetrator then has 30 days to request a DSHS internal management review. RCW 26.44.125(1)-(2); WAC 388-15-085(2).

After DSHS receives the alleged perpetrator's request for review, DSHS management must review its investigator's finding within 30 days. RCW 26.44.125(4); WAC 388-15-093(3). "Upon completion of the review, the department shall notify the alleged perpetrator *in writing* of the agency's determination. *The notification must be sent by certified mail, return receipt requested, to the person's last known address.*" RCW 26.44.125(4) (emphasis added); *accord* WAC 388-15-097. If the DSHS management review does not change its investigator's finding,

> the person named as the alleged perpetrator in the report may request an adjudicative hearing to contest the finding. . . . The request for an adjudicative proceeding must be filed within thirty calendar days *after receiving notice of the agency review determination.* If a request for an adjudicative proceeding is not made as provided in this subsection, the alleged perpetrator may not further challenge the finding and shall have no right to agency review or to an adjudicative hearing or judicial review of the finding.

RCW 26.44.125(5) (emphasis added); *accord* WAC 388-15-105.

Here, DSHS sent its internal review determination to Ms. Snyder in writing, as RCW 26.44.125(4) and WAC 388-15-097 expressly require. DSHS sent its determination

8

by certified mail, return receipt requested, to the address Ms. Snyder provided on her review request form just one week earlier, as the statute and regulation both required DSHS to do.

Nevertheless, Ms. Snyder argues that RCW 26.44.125(5), which gave Ms. Snyder 30 days to request an administrative hearing "after receiving notice of the agency review determination," means that the time period to request a hearing was tolled until she received *actual* notice. She bases her argument on language contained in RCW 26.44.100.

RCW 26.44.100 declares a legislative purpose and general notification procedures that DSHS is required to follow when investigating child abuse allegations against a parent, guardian, or legal custodian of a child. Subsections (2) through (4) of RCW 26.44.100 seek to ensure that the parent, guardian, or legal custodian is informed of his or her due process rights from when the investigation commences through the time he or she seeks review of a founded report. However, Ms. Snyder received actual notification of her due process rights from commencement of the investigation through the time she sought review of the founded finding. Ms. Snyder's concern is with DSHS's

communication of its review determination, which occurred *after* she sought review of the founded finding. RCW 26.44.100(2)-(4) is therefore not pertinent.[1]

Nevertheless, we do agree with Ms. Snyder that the legislative purpose contained in RCW 26.44.100(1) is pertinent. RCW 26.44.100 provides:

> **Information about rights—Legislative purpose— Notification of investigation, report, and findings.** (1) The legislature finds parents and children often are not aware of their due process rights when agencies are investigating allegations of child abuse and neglect. The legislature reaffirms that all citizens, including parents, shall be afforded due process, that protection of children remains the priority of the legislature, and that this protection includes protecting the family unit from unnecessary disruption. To facilitate this goal, *the legislature wishes to ensure that parents and children be advised in writing and orally, if feasible, of their basic rights and other specific information as set forth in this chapter*, provided that nothing contained in this chapter shall cause any delay in protective custody action.

(Emphasis added.) The italicized language in the above quote requires us to construe the act to protect the due process rights of parents and those in loco parentis. We, however, reject Ms. Snyder's argument that the only method of protecting these rights is to imply rights not explicitly given by the statute.

---

[1] For those notifications subject to RCW 26.44.100(4), explicit language therein supports a requirement for DSHS to do more than send notices by certified mail whenever there is reason for DSHS to believe that a last known address is not current. This requirement is not onerous in the age of cellular phones, texting, and e-mail.

Ms. Snyder's argument however exposes the ambiguity created when the legislature specifies a method of written notice, later refers to "receipt" of the notice, and then fails to address the situation created when the person does not actually receive the notice. *See State v. Vahl*, 56 Wn. App. 603, 607-08, 784 P.2d 1280 (1990). This exact situation happened in *Vahl*. In that case, the State charged Patricia Vahl with driving while adjudged a habitual traffic offender. *Id.* at 604. Ms. Vahl moved to dismiss, claiming she never received actual notice that the Department of Licensing (DOL) revoked her driver's license. *Id.* at 605. The controlling statute, former RCW 46.65.065(1) (1979), provided that

> [w]henever a person's driving record, as maintained by the department, brings him or her within the definition of an [sic] habitual traffic offender, as defined in RCW 46.65.020, the department shall forthwith notify such person of the revocation in writing *by certified mail at his or her address of record as maintained by the department.* . . . The person *upon receiving such notice* may, in writing and within ten days therefrom request a formal hearing: *Provided,* That if such a request is not made with the prescribed time the right to a hearing shall be deemed to have been waived . . . .

(Emphasis added.)

The State argued that "if the Legislature intended actual notice, it would have explicitly stated notice is ineffective unless received"—just as DSHS argues in this case. *Vahl*, 56 Wn. App. at 607. Ms. Vahl argued—just as Ms. Snyder argues here—that if the legislature intended notice to be sufficient regardless of whether the person actually

11

received it, the legislature would have expressly said so, and also would not have used the word "received." *Id.*

The *Vahl* court agreed with the State and held that constructive notice was sufficient, and adopted the constructive notice standards as set forth in *Black's Law Dictionary. Id.* at 608-09. Those standards are satisfied either:

> (a) Where there exists actual notice of matter, to which equity has added constructive notice of facts, which an inquiry after such matter would have elicited; [or] (b) where there has been a designed abstinence from inquiry for the very purpose of escaping notice.

*Id.* at 609 (emphasis omitted) (quoting BLACK'S LAW DICTIONARY 957 (5th ed. 1979)).

In adopting a constructive notice standard, the *Vahl* court emphasized that the legislature would not have intended to require actual receipt of notice by persons who disrespect the law, such as habitual traffic offenders, who might thwart actual service by refusing to sign for certified mail. *Id.* at 608. The *Vahl* court held that Ms. Vahl had constructive notice of her license revocation, reasoning that there was no evidence that she lived anywhere other than where the DOL sent the notice, she had previously received two citations for driving with a suspended license, and she had also signed for two certified letters from the DOL. *Id.* at 609. Therefore, "she had actual notice of matters to which the law may equitably add constructive notice of facts which would have been discovered upon reasonable inquiry." *Id.*; *see also City of Seattle v. Foley*, 56 Wn. App.

12

485, 488, 784 P.2d 176 (1990) (holding that Ronald Foley received inquiry notice that his license was revoked, satisfying the ambiguously worded statute, because the arresting officer told Mr. Foley that refusal to submit to a breath test would result in revocation, the officer took Mr. Foley's license and gave him a temporary one, and the State sent notice to Mr. Foley's last known address).

Although *Vahl* justified a constructive notice standard on the basis of the lawless nature of habitual traffic offenders who might intentionally frustrate an actual notice standard, we adopt a constructive notice standard for RCW 26.44.125(5) for a slightly different reason. Here, the process RCW 26.44.125 outlines makes actual receipt of a properly addressed DSHS review determination all but assured, except in those situations where the recipient knowingly refuses to receive the certified mail. This is because DSHS completes its internal management review quickly and sends the review determination by certified mail to the address the alleged perpetrator has recently specified.[2] If DSHS does not send notice of its review determination to the correct address, the requirement of constructive notice is not met.

---

[2] DSHS's initial letter, which advised Ms. Snyder of her right to request an internal review, explained that DSHS management would send Ms. Snyder its internal review determination in "about 60 days" of its receipt of her request for a review. AR at 41. In 2012, the legislature amended RCW 26.44.125(4) to specify the precise time permitted for internal review—30 days. *See* LAWS OF 2012, ch. 259, § 11(4).

13

No. 32758-2-III
*State v. Snyder*

Here, Ms. Snyder knew that the allegation that she had neglected children in her care was founded. She knew that DSHS would mail her its review determination within about 60 days of receiving her April 6, 2011 request for a review. She also knew DSHS would mail its review determination to her Longfellow address, given that she specifically instructed DSHS to mail it there. Finally, the woman who replaced Ms. Snyder in the Longfellow house told Ms. Snyder that mail had come for her, and the mail had been returned to sender. Having actual knowledge of all of this, it is equitable to require Ms. Snyder to have called DSHS by mid-June 2011—about 60 days after she mailed her review request form—to inquire about her request, and to impute knowledge of what this inquiry would have elicited. For these reasons, Ms. Snyder had constructive notice around mid-June 2011 that DSHS had upheld its investigator's finding. Her April 2013 administrative hearing appeal was therefore untimely.

Affirmed.

Lawrence-Berrey, J.

WE CONCUR:

Fearing, C.J.

Korsmo, J.

14